```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff,**<br><br>v.<br><br>[1] WANDA VAZQUEZ-GARCED,<br>[2] JULIO M. HERRERA-VELUTINI,<br>[3] MARK T. ROSSINI,<br><br>**Defendants.** | **CRIMINAL NO.** 22-342(RAM) |

### MEMORANDUM AND ORDER

This matter comes before the Court on Defendants' *Emergency Motion to Enjoin the Government from Reviewing Privileged Materials, for the Immediate Return of Privileged Information Seized by the Government, and for an Evidentiary Hearing* (the "*Motion*"). (Docket No. 114). For the reasons discussed herein, the *Motion* is hereby **MOOT IN PART, DENIED IN PART** and **GRANTED IN PART**. However, the Filter Team may only resume its review of electronically stored information upon implementing the modifications to the filter team protocol as outlined below.

### I. PROCEDURAL BACKGROUND

On November 11, 2022, co-Defendants Julio Herrera-Velutini ("Herrera") and Mark Rossini ("Rossini") filed the pending *Motion*. (Docket No. 114). Therein, Defendants requested that the Court issue an order: (a) enjoining the Government from reviewing Defendants' electronic data that is protected by attorney-client

and attorney work-product privilege; (b) instructing the Government to return seized and/or privileged data in their possession pursuant to Fed. R. Crim. P. 41(g); (c) instructing the Government to disclose how privileged electronic data is being reviewed and scheduling a hearing on that issue; and (d) barring the Government from using privileged materials in any way. Id. Co-defendant Wanda Vázquez-Garced ("Vázquez") subsequently requested, and was granted, joinder with regards to the *Motion*. (Docket Nos. 128 and 129).

The Government filed a *Response* addressing the merits of Defendants' request and informing the Court of the filter review protocol currently in place. (Docket No. 135). The Government agreed to disclose the applicable review procedures and not use privileged information throughout the litigation. Id. However, the Government objected to Defendants' request that: (a) the filter team be enjoined from conducting the privilege review; (b) a special master be appointed; and (c) the seized materials be returned to Defendants. Id.

Defendants filed a *Reply* arguing that the filter protocol as described by the Government was inadequate and reiterating their previous requests for relief. (Docket No. 143).[1] The Government

---

[1] In their *Reply*, Defendants allude to the fact that the recusal of the prosecution team or dismissal of the indictment may be necessary. The Court will not address these arguments in the absence of actual briefing on the merits. However, the Court notes that "disqualification should be 'a measure of last resort.'" United States v. Kouri-Perez, 992 F. Supp. 511, 511-12 (D.P.R.

filed a sur-reply noting that Defendants have failed to provide case law that supports their requests. (Docket No. 150).

## II.  FACTUAL BACKGROUND

Between November 2020 and January 2021, the Government obtained five (5) search warrants for the following **personal** email accounts: Herrera's Yahoo and Apple electronic accounts; Rossini's Apple and Google accounts; and Vázquez's Apple account. (Docket No. 135 at 2). Additionally, the Government obtained a second search warrant for Herrera's personal Apple email account in July 2021 and a search warrant for Vázquez's personal phone in January 2022. Id. at 4. Notably, the Government did not seek warrants to search Bancrédito International Bank & Trust's (the "Bank") servers for Herrera's corporate email account. Id. at 3. Furthermore, although Vázquez is an attorney, she was not practicing as one during the relevant time period of the search warrant. Id. at 5.

According to the Government, an FBI agent that was **not** involved in the investigation conducted an informal filter review of the communications seized pursuant to the aforementioned warrants to avoid exposing investigative agents to any privileged information. Id. On March 17, 2022, the Government implemented a formal filter review protocol with regards to information seized

---

1997) (quoting In re Grand Jury Proceedings, 859 F.2d 1021, 1026 (1st Cir. 1988)).

from Herrera and Rossini's emails to prevent the "Prosecution Team" (*i.e.*, prosecutors and agents investigating the case) from being exposed to privileged communications. (Docket No. 137-1). Pursuant to the protocol, the Government created a "Filter Team" comprised of an attorney and paralegals from the Public Integrity Section, as well as an FBI agent, with no role in the investigation or prosecution of the case. (Docket Nos. 137-1; 135 at 6). Pursuant to the protocol, the Electronically Stored Information ("ESI") obtained from Defendants' email accounts via search warrant was uploaded into "Relativity," a software that allows the user to search and segregate documents pursuant to "keywords." Id. at 6. The Filter Team was tasked with conducting keyword searches for the names and emails of attorneys and law firms who the Government had learned potentially represented any of the Defendants or the Bank. Id. Any communication containing a keyword would be segregated and withheld from the Prosecution Team. Id. Lastly, the Filter Team was tasked with reviewing all communications containing the keywords to determine whether they were privileged or simply a "false hit," which could be provided to the Prosecution Team. Id.

On September 30, 2022, an analogous filter review protocol was implemented to review the ESI from Vázquez's personal email account and cellular phone. (Docket Nos. 135 at 7; 137-2). As

stated above, Defendants filed the pending *Motion* on November 11, 2022.

### III. DISCUSSION

Pursuant to Defendants' requests, the Government agreed to (1) notify the process currently in place to review the seized ESI; and (2) not use any privileged materials seized. (Docket No. 135). Therefore, these requests are **MOOT**. The Court remains tasked with determining: (1) the adequacy of the filter protocol used thus far; (2) whether the government needs to return the ESI that was seized; and (3) if any changes should be made to the review process going forward.

#### A. Filter Teams Can Adequately Protect a Search Subject's Privilege

As an initial matter, several courts of appeals have approved the use of filter or "taint" teams comprised of lawyers, paralegals, and agents who will not participate in the prosecution as an accepted mechanism to protect privileged materials during a criminal investigation. *See, e.g.,* United States v. Jarman, 847 F.3d 259, 266 (5th Cir. 2017); In re Search for Elec. Commc'ns, 802 F.3d 516, 530 (3d Cir. 2015). Moreover, the First Circuit has alluded to the use of filter teams in a case questioning the validity of a warrant against an internet-related services provider. In United States v. Aboshady, the First Circuit found that there was no violation in the execution of a warrant where

FBI personnel that was not part of the prosecution team uploaded produced documents to a database, "applied search terms to filter out potentially privileged communications, and then turned the database over to the investigative team." United States v. Aboshady, 951 F.3d 1, 5 (1st Cir. 2020).

Courts have also recognized that filter teams are particularly appropriate when communications have been **covertly obtained via a validly issued search warrant**. *See* In re Search Warrants Executed on Apr. 28, 2021, 2021 WL 2188150, at *2 (S.D.N.Y. 2021), appeal withdrawn (June 30, 2021) (citing In re Search Warrants Executed on April 9, 2018, No. 18-MJ-3161 (S.D.N.Y.)). As the Sixth Circuit has explained:

> [G]overnment taint teams seem to be used primarily in limited, exigent circumstances in which government officials have already obtained the physical control of potentially-privileged documents through the exercise of a search warrant. **In such cases, the potentially-privileged documents are already in the government's possession, and so the use of the taint team to sift the wheat from the chaff constitutes an action respectful of, rather than injurious to, the protection of privilege**.

In re Grand Jury Subpoenas, 454 F.3d 511, 522–23 (6th Cir. 2006) (emphasis added). Even in complex, high-profile cases, where attorneys are the subject of search warrants, courts have concluded that analogous filter team protocols are sufficient to "adequately safeguard the attorney-client privilege and the constitutional

rights of the search subjects[.]" In re Search Warrants Executed on Apr. 28, 2021, 2021 WL 2188150, at *2 (collecting cases) (approving the use of a filter team to review results from pre-indictment search warrants issued to the iCloud and email accounts of Rudolph Giuliani and others).

The cases cited by Defendants that strongly disfavor filter teams are significantly distinguishable and not binding on this Court. Chief among them is In re Search Warrant Issued June 13, 2019, in which the Fourth Circuit concluded that a magistrate judge erroneously approved a filter team to review 52,000 emails seized from a law firm via search warrant, where: (a) less than 1% of said emails were related to the client under investigation; and (b) many of the remaining emails contained privileged information regarding other clients. In re Search Warrant Issued June 13, 2019, 942 F.3d 159, 178 (4th Cir. 2019), as amended (Oct. 31, 2019).[2] "Although the Fourth Circuit in that case held that the magistrate judge's authorization of the filter team and protocols were improper under the circumstances, it did not hold that the Government's use of a filter team is **categorically inappropriate**." In re Search Warrants Executed on Apr. 28, 2021, 2021 WL 2188150, at *2.

---

[2] In a concurring opinion, Judge Allison Jones Rushing noted that the filter team and protocol were precluded from operating given the "unique facts and circumstances" of the case, further highlighting the distinguishable nature of the case. Id. at 183. Defendants have not grappled with the facts that distinguish this case from those they cite in their briefs.

In the case at bar, the Government covertly obtained information from Defendants' **personal** email accounts via pre-indictment search warrants to third-party service providers. Although Defendants do not allege that the warrants were invalid, they take issue with the fact that the warrants did not specify how the seized information would be reviewed. However, "[d]istrict courts in this circuit have held that *ex ante* restrictions in a warrant on how law enforcement may search an email account are not required." United States v. Keleher, 516 F. Supp. 3d 162, 171 (D.P.R. 2021); *see also* United States v. Upham, 168 F.3d 532, 537 (1st Cir. 1999) (noting that warrants rarely prescribe methods of recovery because "[t]he warrant process is primarily concerned with identifying *what* may be searched or seized—not how") (emphasis in the original).

Under the circumstances of this case, the Court finds that the Government's use of a filter team constituted the correct course of action to protect Defendants' privileged communications. Thus, the Court hereby **DENIES** Defendants' requests to either appoint a Special Master or authorize Defendants to conduct the initial privilege review themselves.

### B. The Return of Seized Property

Throughout their briefing, Defendants also reiterated their stance that the Government should be instructed to *return* seized information. Defendants request the return of: (1) their "email

accounts and iCloud backups," which Defendants have presumably retained access to; (2) "an electronic copy of the documents seized" for Defendants to review; (3) all copies of privileged documents; and (4) all materials not within the scope of the warrant. (Docket No. 114 at 8, 16, 17, 18). Defendants invoked Fed. R. Crim. P. 41(g) ("Rule 41(g)"), which provides that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." When evaluating a post-indictment Rule 41(g) motion to return documents, Courts apply the standard applicable to preliminary injunctions. *See* In re Search Warrant Issued June 13, 2019, 942 F.3d, 170-71. "To grant a preliminary injunction, a district court must find the following four elements satisfied: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm absent interim relief, (3) a balance of equities in the plaintiff's favor, and (4) service of the public interest." Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc., 794 F.3d 168, 171 (1st Cir. 2015).

Although Defendants address these factors in passing, they do not sufficiently brief the matter so as to warrant the extraordinary remedy requested. On its face, there is no evidence that an unlawful search and seizure occurred given that the ESI seized was obtained via search warrant. Moreover, the few cases provided by Defendants in support of these requests are inapposite

or have subsequently been overturned. Therefore, the Court **DENIES** Defendants' broad requests for the return of all seized and/or privileged information under Rule 41(g) at this stage of the proceedings.

### C. Modifications to the Filter Review Protocol

Nevertheless, in light of the record and the Government's own proposals, improvements to the review protocol can be made at this juncture to further ensure that Defendants' privileges are protected and avoid subsequent evidentiary disputes. Therefore, the Court hereby **ORDERS** the following:

1. The composition of the Filter Team shall be modified, so that it is comprised of attorneys and staff from outside of the Department of Justice's ("DOJ") Public Integrity Section. The members of the filter team shall not share an immediate supervisor with anyone on the Prosecution Team and any supervisor involved in the filter team review shall be walled off from the underlying investigation.[3]

2. Defendants shall have a term of **fourteen (14) days** following the entry of this order to submit a list of "keywords" for the filter team to use in their review to capture any communications or documents protected by the

---

[3] Because the DOJ's Public Integrity Section in Washington is prosecuting this case, the Court is of the view that there is no reason why a filter team consisting of individuals from a different DOJ section cannot be readily recruited to bolster the team's appearance of impartiality.

Case 3:22-cr-00342-RAM   Document 170   Filed 02/28/23   Page 11 of 12

Criminal No. 22-342 (RAM)                                                               11

attorney-client privilege, the attorney work-product doctrine, or any other privileges Defendants contend are applicable here.

3. Once the Government has received the additional keywords identified by Defendants, or after the fourteen (14) days have elapsed, the Filter Team can resume its review.

4. Documents containing any of the keywords shall be segregated for prompt review by the Filter Team.

5. The Filter Team shall segregate materials into three categories: (1) non-privileged or "false hits"; (2) privileged; or (3) potentially privileged. "Potentially privileged" in this context means that the Filter Team either does not have sufficient information to make a privilege determination or finds that an exception to privilege (*i.e.*, waiver) may apply.

6. Documents may be released to the Prosecution Team if, after reviewing the communication, the Filter Attorney concludes that there is no privileged information in the communication (in other words, that it is a "false hit").

7. All privileged communications shall remain segregated on the Filter Team side and may not be produced to the Prosecution Team.

8. The Filter Team shall send a copy of all potentially privileged communications, along with a log of the same,

  to the applicable Defendant's counsel. The log shall include the file name, the type of file, the file date, the sender, the recipient, and the subject matter.

9. The Filter Team shall work with defense counsel to reach an agreement as to whether the potential privileged material: (1) is not privileged; (2) falls within an exception to the privilege; or (3) can be redacted to eliminate privileged information. If the Filter Team and defense counsel cannot agree, the communications shall be submitted to the Court for a determination regarding privilege and/or proposed redactions of the privileged material.

## IV. CONCLUSION

For the foregoing reasons, Defendants' *Emergency Motion* at Docket No. 114 is hereby **MOOT IN PART, DENIED IN PART** and **GRANTED IN PART**. Furthermore, the Filter Review Protocol is hereby **AMENDED** in the manner outlined above.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico this 28th day of February 2023

              S/ RAÚL M. ARIAS-MARXUACH
              United States District Judge