IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CRIM. NO. 22-342 (SCC) |
| WANDA VÁZQUEZ-GARCED [1], JULIO M. HERRERA-VELUTINI [2], AND MARK T. ROSSINI [3], | |
| Defendants. | |

**OPINION AND ORDER**

Pending before the Court is Defendant Wanda Vázquez-Garced's ("Vázquez-Garced") Motion to Sever, which Defendant Mark T. Rossini ("Rossini") joins. *See* Docket Nos. 368, 369. For the reasons below, the Court **GRANTS IN PART AND DENIES IN PART** Vázquez-Garced's Motion at Docket No. 368.

**I. BACKGROUND**

Facts germane to the severance issue at hand boil down to who was charged with doing what and when. The Court focuses its summary accordingly.

The Government charged two conspiracies and corresponding substantive counts in a seven-count indictment. *See* Docket No. 3, pg. 1. Those conspiracies allegedly spanned different, nonoverlapping time periods and pursued distinct goals.

The first conspiracy charged in Count One ("Conspiracy One") allegedly spanned from December 2019 to June 2020. *See* Docket No. 3, ¶ 29. The purpose of Conspiracy One was "offering bribes . . . in exchange for the specific acts of . . . [Vázquez-Garced] terminating a Commissioner of OCIF[1] and appointing a new Commissioner of . . . [Julio M. Herrera-Velutini's ("Herrera-Velutini")] choosing. *See* Docket No. 3, ¶ 30.

The second conspiracy charged in Count Five ("Conspiracy Two") allegedly spanned from April 2021 to August 2021. *See* Docket No. 3, ¶ 137. Conspiracy Two had two purposes. The first was for Herrera-Velutini and

---

[1] OCIF is the Spanish language acronym for the Office of the Commissioner of Financial Institutions of Puerto Rico.

unindicted coconspirators "to offer bribes . . . in exchange for Public Official A directing and exerting influence on public officials to resolve the OCIF examination of . . . [Herrera-Velutini's] Bank on terms favorable to The Bank."[2] Docket No. 3, ¶ 138(a). The second was for Herrera-Velutini and unindicted coconspirators to "enrich themselves and The Bank by corruptly obtaining favorable treatment by OCIF, including the resolution of the OCIF examination of The Bank on terms favorable to The Bank and the determination that The Bank was not required to file . . . [Suspicious Activity Reports], in accordance with the . . . [Bank Secrecy Act], for certain transactions conducted at The Bank." Docket No. 3, ¶ 138(b). Vázquez-Garced and Rossini are not alleged to have played any part in Conspiracy Two. *See* Docket No. 392, pg. 3.

The Government charged Vázquez-Garced in three of the Indictment's seven counts: Count One, conspiracy to commit bribery (18 U.S.C. § 371), Count Three, federal program bribery (18 U.S.C. §§ 666(a)(1)(B) and 2), and Count

---

[2] "The Bank" refers to Bancrédito.

Four, honest services wire fraud (18 U.S.C. §§ 1343, 1346, and 2). *See* Docket No. 3, ¶¶ 29, 131, 133. The Government also charged Rossini in three counts: Count One, conspiracy to commit bribery (18 U.S.C. § 371), Count Two, federal program bribery (18 U.S.C. §§ 666(a)(2) and 2), and Count Four, honest services wire fraud (18 U.S.C. §§ 1343, 1346, and 2). *See* Docket No. 3, ¶¶ 29, 128, 133. Herrera-Velutini was charged in Counts One, Two, and Four alongside his co-defendants and alone in Counts Five, Six, and Seven for conduct relating to Conspiracy Two. *See* Docket No. 3, ¶¶ 29, 128, 133, 137, 177, 180.

Vázquez-Garced now moves to sever Counts Five, Six, and Seven pursuant to Federal Rule of Criminal Procedure 8(b) and to sever Herrera-Velutini as a defendant pursuant to Rule 14(a). *See* Docket No. 368, pg. 1. Rossini joins Vázquez-Garced's motion to sever Herrera-Velutini as a defendant on grounds that the Indictment improperly joins Counts Five, Six, and Seven under Rule 8(b) and that a joint trial poses a substantial prejudice risk justifying severance under Rule 14.

*See* Docket No. 369, pgs. 1–2. Herrera-Velutini neither joins nor opposes his co-defendants' motions.

The Government opposes severance, characterizing the two conspiracies as a series of acts or transactions within an uncharged, overarching conspiracy sufficient to satisfy Rule 8(b)'s joinder requirements. *See* Docket No. 392, pg. 9. The Government further argues any prejudice defendants might suffer does not merit severance under Rule 14(a) because courts rarely sever coconspirators' trials, Conspiracy One evidence will predominate at trial, and limiting instructions will cure any prejudice risk.[3] *See* Docket No. 392, pgs. 12–15. Finally, the Government argued granting severance will burden the Government with trying Conspiracy One twice and risk inconsistent verdicts. *See* Docket No. 392, pgs. 15–16.

---

[3] The Government estimated that presenting Conspiracy One evidence will take five to seven days and that presenting Conspiracy Two evidence will take one and a half days. *See* Docket No. 392, pg. 13.

## II.  STANDARD OF REVIEW

Under Federal Rule of Criminal Procedure 8(b), an "indictment . . . may charge 2 or more defendants . . . alleged to have participated in the same act or transaction, or in the same series of acts or transactions, . . . in one or more counts together or separately. All defendants need not be charged in each count." FED. R. CRIM. P. 8. Yet even where "Rule 8(b) is satisfied, a joint trial may be improper [under Rule 14] in consequence of the prejudice it may cause." *United States v. Martínez*, 994 F.3d 1, 12 (1st Cir. 2021) (citing FED. R. CRIM. P. 14).

Under Rule 14(a), district courts may sever properly joined defendants' trials, order separate trials of counts, or order any other relief to prevent prejudice. *See* FED. R. CRIM. P. 14(a); *Zafiro v. United States*, 506 U.S. 534, 539, 541 (1993) (recognizing district courts' discretion to fashion appropriate remedies). "[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants[] or

prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. *Zafiro*'s high standard reflects the federal system's preference for jointly trying defendants indicted together. *See id.* at 537.

"[P]rejudice from being tried jointly 'can come in various forms, including jury confusion, the impact of evidence that is admissible against only some defendants, and "spillover effects" where the crimes of some defendants are more horrific or better documented than the crimes of others.'" *Martínez*, 994 F.3d at 15–16 (quoting *United States v. Innamorati*, 996 F.2d 456, 469 (1st Cir. 1993)). While "there is always a risk of . . . 'garden variety' prejudice in any joint trial[,] . . . prejudice of that sort cannot 'in and of itself . . . suffice' to carry a defendant's burden" to justify severance. *Id.* at 12 (quoting *United States v. Boylan*, 898 F.2d 230, 246 (1st Cir. 1990)); *cf. United States v. Tiem Trinh*, 665 F.3d 1, 19 (1st Cir. 2011) ("To establish prejudice, [a defendant] must show 'more than just a better chance of acquittal at a separate trial.'" (quoting *United States v. Tejeda*, 481 F.3d 44, 55 (1st Cir. 2007)).

Indeed, defendants are not entitled to severance even "where large amounts of testimony are irrelevant to one defendant, or where one defendant's involvement . . . is far less than the involvement of others." *United States v. DeCologero*, 530 F.3d 36, 55 (1st Cir. 2008) (quoting *Boylan*, 898 F.2d at 246); *Zafiro*, 506 U.S. at 539. Instead, "to prevail, 'a defendant must prove prejudice so pervasive that a miscarriage of justice looms.'" *United States v. Sotomayor-Vázquez*, 249 F.3d 1, 17 (1st Cir. 2001) (quoting *United States v. Pierro*, 32 F.3d 611, 615 (1st Cir. 1994)).

The degree of prejudice posed by a joint trial varies depending on the charges co-defendants face and share. "[A] defendant seeking severance from a codefendant with whom she has been charged with conspiring" faces a "particularly formidable hurdle." *Martínez*, 994 F.3d at 13 (citing *United States v. DeLuca*, 137 F.3d 24, 36 (1st Cir. 1998)). In contrast, a defendant seeking severance from a co-defendant charged with a distinct conspiracy confronts a lower standard. *See id.* at 13.

Where coconspirators seek separate trials for the same conspiracy, "'severance will rarely, if ever, be required.'" *DeLuca*, 137 F.3d at 36 (quoting *United States v. Flores-Rivera*, 56 F.3d 319, 325 (1st Cir. 1995); *see also United States v. Celestin*, 612 F.3d 14, 19 (1st Cir. 2010); *United States v. Soto-Beníquez*, 356 F.3d 1, 29–30 (1st Cir. 2003). This is because the same conspiracy evidence is often admissible against all defendants, even if tried in separate proceedings. *See* 1A, Charles A. Wright & Andrew D. Leipold, *Federal Practice and Procedure* § 224, n.27 (5th ed. 2021); *see also Soto-Beníquez*, 356 F.3d at 29–30. Where "evidence featuring one defendant is independently admissible against a codefendant," no injustice looms and a defendant "cannot convincingly complain of an improper spillover effect." *Martínez*, 994 F.3d at 13 (quoting *United States v. Floyd*, 740 F.3d 22, 37 (1st Cir. 2014)). Where this high bar for severance goes unmet, Courts remedy "garden variety prejudice" risk with trial management and detailed jury instructions. *See Tiem Trinh*, 665 F.3d at 20 (affirming a denial of severance because the trial

judge repeatedly reminded the jury to make individualized findings when deciding whether the defendants conspired); *DeCologero*, 530 F.3d at 52 (explaining that jury instructions and trial management can sufficiently remedy prejudice and jury confusion risks in multi-defendant cases).

On the other hand, where a defendant seeks severance from a co-defendant charged only with distinct offences, including a distinct conspiracy, the standard is not so high. *See Martínez*, 994 F.3d at 13; *United States v. Falcón-Nieves*, 79 F.4th 116, 123 (1st Cir. 2023) (following *Martínez*). In *Martínez*, defendant Sally López-Martínez ("López") faced conspiracy and substantive counts for public corruption. *See Martínez*, 994 F.3d at 4. The district court declined to sever her trial, concluding that the various offenses charged "each related to a 'master scheme' that had a pyramid structure with" one individual at the top. *Id.* at 13. On appeal, the First Circuit observed "that López and . . . [her co-defendant] were [not] in fact charged with being coconspirators in any count contained in the indictment." *Id.* As non-coconspirators, the

Court reviewed her Rule 14 challenge using a lower standard than that applicable to coconspirators seeking severance. *Id.*

In assessing prejudice under that lower standard for non-coconspirators, the First Circuit considered, amongst other factors, the "depth and quality" of evidence of the conspiracy with which López was *not* charged, relevance to the conspiracy in which López was charged, the time required to present such evidence at trial, whether evidence against López was circumstantial or direct, and the effectiveness of limiting instructions. *Id.* at 14–15.

In López's case, her jury heard "days of detailed evidence" regarding López's co-defendant's distinct conspiracy which would have been irrelevant and inadmissible were she separately tried for her conspiracy. *Id.* at 14. Furthermore, the First Circuit noted that the evidence against López was largely circumstantial and extensive direct evidence of corrupt intent in her co-defendant's separate conspiracy may have caused the jury to impute the state of mind of those engaged in her co-defendant's conspiracy to

López despite limiting instructions. *Id.* at 15. The Government's case also "blurred the lines between the schemes" by presenting evidence of each back-to-back, heightening the risk that the jury conflated the schemes. *Id.* Ultimately, the First Circuit vacated López's conviction because she represented "the rare case in which '[t]he dangers for transference of guilt from one to another across the line separating conspiracies, subconsciously or otherwise, [were] so great' as to require severance." *Martínez*, 994 F.3d at 16 (alteration in original) (quoting *Kotteakos v. United States*, 328 U.S. 750, 774 (1946)).

## III. Discussion

Vázquez-Garced and Rossini move for severance under both Rule 8(b) and Rule 14(a). Their arguments under both rules reduce to a single issue: whether co-defendants charged with two conspiracies, one common to all and the other exclusive to one, are properly tried together on all counts. Based on the unique facts of this case and this Circuit's

Rule 14 case law, the Court determines they are not.[4]

This case's facts and the Indictment position it between the two strands of this Circuit's Rule 14 case law. Coconspirators seeking separate trials for the same conspiracy confront a formidably high standard to show prejudice. *See Martínez*, 994 F.3d at 13. Defendants seeking severance from a co-defendant charged only with distinct offences face a lower standard to show prejudice. *See id.* With respect to Conspiracy One-related Counts One through Four, Vázquez-Garced and Rossini fall into the former category. Regarding Conspiracy Two-related Counts Five through Seven, Vázquez-Garced and Rossini fall into the latter category. The Court therefore assesses under those respective

---

[4] The Parties extensively briefed whether Rule 8(b) joinder is proper. However, even if the two conspiracies in this indictment are properly joined under Rule 8(b) because they comprise the same series of acts or transactions within a "larger uncharged scheme or plan," Rule 14 prejudice may still be present. *See Martínez*, 994 F.3d at 12–13. Accordingly, the Court need not reach the propriety of Rule 8(b) joinder and cuts to the determinative issue: whether Rule 14 prejudice, in light of *Martínez*, is present.

standards whether a joint trial for counts associated with Conspiracy One or for all counts would prejudice Vázquez-Garced and Rossini in violation of Rule 14(a).[5]

### A. Conspiracy One Prejudice Risk

All three co-defendants allegedly conspired regarding Conspiracy One, therefore the high standard for coconspirators seeking severance undoubtedly applies when considering whether to sever Vázquez-Garced and Rossini's trial for Counts One through Four from that of Herrera-Velutini.

Vázquez-Garced contends that failing to separately try Herrera-Velutini for his Conspiracy One involvement would cause spillover prejudice and guilt by association.[6] *See* Docket

---

[5] This situation is unique. The Parties cite no First Circuit case, and the Court has found none, featuring two conspiracies spanning different time periods and pursuing different ends without an overarching conspiracy or continuing criminal enterprise charge. Absent guidance to the contrary, the Court applies both strands of First Circuit case law to assess Rule 14 prejudice risk and fashion just relief. *See* FED. R. CRIM. P. 14(a).

[6] Vázquez-Garced additionally claims her speedy trial rights will be compromised unless the Court severs Herrera-Velutini due to his ongoing discovery disputes and pending pretrial motions. *See* Docket No. 368, pg.

No. 368, pgs. 9–10. Specifically, she alleges evidence regarding Herrera-Velutini and Bancrédito's history with OCIF would not be admissible if she and Rossini are separately tried. *See* Docket No. 368, pgs. 7–9. She further claims the Government's case against Herrera-Velutini is better documented than its case against her. *See* Docket No. 368, pg. 9. Rossini echoes Vázquez-Garced's concerns about evidentiary spillover and guilt by association. *See* Docket No. 369, pg. 20.[7] The Government responds that Vázquez-Garced and Rossini overstate their culpability differences and that any evidentiary spillover will not confuse a properly instructed jury. *See* Docket No. 392, pg. 13–15.

---

10. The Court has tentatively set trial for February or March 2024. *See* Docket No. 329. Vázquez-Garced does not develop her argument beyond bald assertions, and the Court does not entertain it. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990).

[7] While framed as a request to sever Herrera-Velutini as a defendant, the bulk of Rossini's discussion on Rule 14 prejudice addresses the effect of trying charges associated with Conspiracy Two alongside those associated with Conspiracy One. Rossini does not clearly identify any prejudice from trying all three co-defendants together for counts associated with Conspiracy One. *See* Docket No. 369, pg. 16. Nonetheless, the Court broadly construes and addresses his arguments.

Vázquez-Garced and Rossini fail to satisfy the onerous standard to sever their trial for shared Conspiracy One from Herrera-Velutini. Even if the evidence at trial ends up showing that Vázquez-Garced and Rossini are indeed less culpable or played comparatively minor roles in Conspiracy One, coconspirators are routinely tried together despite varied involvement. *See, e.g.*, *United States v. DeLeón*, 187 F.3d 60, 63 (1st Cir. 1999) (affirming denial of severance where a defendant played a minor role in a drug transaction compared to his co-defendant); *DeCologero*, 530 F.3d at 55 (explaining that defendants are not entitled to severance even where large amounts of testimony are irrelevant to them). Nor have Vázquez-Garced and Rossini identified any evidence pertaining to Herrera-Velutini or Bancrédito's OCIF dealings prior to or during the Conspiracy-One timeframe that would *not* be admissible in a severed trial for purposes of proving the nature and existence of Conspiracy One.[8] *See DeCologero*,

---

[8] Should any specific evidence regarding Herrera-Velutini and Bancrédito's OCIF history *prior to or during* Conspiracy One be inadmissible as to Vázquez-Garced or Rossini, or only admissible for

530 F.3d at 54 (affirming denial of severance where a co-
defendant's murder would have been independently
admissible against the movant coconspirators at a separate
trial); *Soto-Beníquez*, 356 F.3d at 29–30 (same); *Tiem Trinh*, 665
F.3d at 19–20 (affirming denial of severance where evidence
of co-defendants' acts would have been admissible at a
separate trial).

In sum, Vázquez-Garced and Rossini have not cleared
the "formidable hurdle" to show prejudice meriting
severance of properly joined defendants under Rule 14(a).[9]
*Martínez*, 994 F.3d at 13. Instead, with regard to a joint trial on

---

limited purposes, the Court will issue appropriate limiting instructions.

At this juncture, the Court does not see how voluminous evidence of
Herrera-Velutini and Bancrédito's OCIF dealings *after* the close of
Conspiracy One would be admissible in a trial solely trying Counts One
through Four. Even if the Government demonstrated admissibility of
some evidence of Herrera-Velutini's OCIF dealings post-Conspiracy One
under Federal Rules of Evidence 402, 403, 404(b), such evidence would be
limited in scope and a limiting instruction would protect Vázquez-Garced
and Rossini from unfair prejudice.

[9] Vázquez-Garced and Rossini both concede Counts One through Four are
properly joined in the Indictment under Rule 8(b). *See* Docket No. 368, pg.
6; Docket No. 412, pg. 3.

counts associated with Conspiracy One, Defendants have highlighted nothing more than "garden variety" prejudice insufficient to justify severance. *Id.* at 12 (quoting *Boylan*, 898 F.2d at 246). Any unfair prejudice risks from evidence admissible only as to certain defendants can be managed effectively in a joint trial through limiting instructions and evidentiary rulings. Accordingly, the Court **DENIES** Vázquez-Garced and Rossini's request to sever Herrera-Velutini as a defendant and, by implication, from their trial for Counts One through Four.

### B.  Conspiracy Two Prejudice Risk

Trying Conspiracy Two charges alongside those associated with Conspiracy One, however, concerns the Court. Pretrial, the Court lacks the hindsight available to the First Circuit in *Martínez* and must rule based on what it anticipates *could* play out at trial. From the Court's current perspective, severing counts associated with Conspiracy Two will best safeguard defendants' right to a trial untainted by unfair prejudice.

The Court's rationale is twofold. First, despite the Government's representations that the evidence concerning Conspiracy Two will only occupy one and a half days at trial, the Court cannot anticipate with enough certainty whether that projection will hold. Pretrial discovery disputes indicate an appreciable risk that the Government could marshal a significant volume of evidence in support of Conspiracy Two and the associated substantive counts. This could result in Vázquez-Garced and Rossini's jury being exposed to "days of detailed[, direct] evidence of a conspiracy not involving them," which the First Circuit held unduly prejudicial in *Martínez*. *Martínez*, 994 F.3d at 14. While the Court does not know at this juncture whether the Government will present circumstantial or direct evidence of Vázquez-Garced and Rossini's involvement in Conspiracy One, that possibility, in light of our other concerns, bolsters the case for severing counts associated with Conspiracy Two.

Second, as in *Mártinez*, there is a risk that testimony from the same Government witnesses regarding Conspiracy

One and Conspiracy Two could result in "back-to-back" evidence on the similar, but distinct, schemes. *See* Docket No. 392, pg. 13. This is especially concerning if the Government, as indicated in its briefing opposing severance, presents the two separately charged schemes as part of a master plan which it purportedly could have—yet did not—charge. *See* Docket No. 392, pg. 9. There is no overarching continuing criminal enterprise or umbrella conspiracy charged in this indictment, nor are there facts indicating that the two conspiracies one year removed from each other are connected. Herrera-Velutini's involvement in both and the Government's reframing of the conspiracy purposes at a higher level of abstraction than those stated in the Indictment signals to this Court a grave risk that the distinct conspiracies may merge at trial.[10] *See* Docket No. 392, pgs. 7, 9. Accordingly, joinder of counts associated with Conspiracy One and Conspiracy Two

---

[10] While the Government so reframed the conspiracies while arguing Rule 8(b) joinder was proper, the Court is concerned such a narrative could emerge, either explicitly or implicitly, at trial and prejudice Herrera-Velutini's co-defendants.

"appear[] to prejudice" Vázquez-Garced and Rossini. Fed. R. Crim. P. 14(a).

Upon finding prejudicial joinder, the Court "may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). *Martínez* made clear that, in the First Circuit, where defendants are charged with two distinct conspiracies, the appropriate remedy is severance. *See Martínez*, 994 F.3d at 16. Out of an abundance of caution, the Court believes severance, rather than a "wait and see" approach, will best protect Vázquez-Garced and Rossini from unfair prejudice. *See id.* at 16–17 (vacating convictions because the district court should have granted severance). Accordingly, the Court **GRANTS** Vázquez-Garced and Rossini's request to sever Herrera-Velutini as a defendant with regard to Counts Five through Seven. While the Court recognizes the burden severance imposes on its calendar and the Government, efficiency cannot come at the cost of defendants' rights to a fair trial. *See Zafiro*, 506 U.S. at 540.

## IV. CONCLUSION

Because the prejudice Vázquez-Garced and Rossini allege regarding Counts One through Four does not meet the high standard for severance between coconspirators being tried for the same conspiracy, the Court **DENIES IN PART** their request to sever Herrera-Velutini as a defendant. However, because the Court has identified prejudicial joinder as to Counts Five through Seven, the Court **GRANTS IN PART** Vázquez-Garced and Rossini's request to sever Herrera-Velutini as to those counts. Therefore, for trial purposes, Herrera-Velutini will be tried separately for Counts Five through Seven after all co-defendants' joint trial for Counts One through Four.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 29th day of November 2023.

S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE