UNITED STATES DISTRICT COURT
OF PUERTO RICO
CASE NO. 22-CR-00342-SCC

UNITED STATES OF AMERICA,
        Plaintiff,
v.

MARK T. ROSSINI,
        Defendant.

---

**MOTION IN LIMINE TO EXCLUDE GOVERNMENT'S DISCOVERY PRODUCTION 11**[1]

    Mark Rossini ("Mr. Rossini"), through undersigned counsels and pursuant Fed. R. Crim. P. 16 and 26.2, Local Rule 116, the Due Process Clause of the Fifth Amendment, the 6th Amendment Right to Present a Defense, the *Jencks Act* (18 U.S.C. § 3500), *Brady v. Maryland*, 373 U.S. 83, 87 (1963), *Giglio v. United States*, 405 U.S. 150, 154 (1972), and *Kyles v. Whitley*, 514 U.S. 419, 432-434 (1995), moves to exclude the government's latest discovery production—Discovery Production 11—because despite being more voluminous than all prior 10 discovery productions combined, the *manner* in which it has been produced makes it virtually unreviewable and extremely difficult to navigate.[2]

---

[1] Undersigned counsels understand this Motion is being filed the morning of a status conference, and thus do not expect the government or the Court to have an opportunity to fully review it. Undersigned counsels have discussed this with the government and have agreed not to argue the motion until the government has an opportunity to review it.

[2] To attempt to review Discovery Production 11, Mr. Rossini contracted an E-Discovery expert, Mike Russo (CEDS). Mr. Russo's CV is attached as **Exhibit**

1

| Discovery Produced | Size |
|---|---|
| Productions 1-10 | *At least* 1,182,144 pages |
| Production 11 | *At least* 1,414,593 pages[3] |

| Name | Size | Files | Type |
|---|---|---|---|
| Image Files | 265.4 GB | 1738559 | Files containing pictures, images or mouse cursors |
| Video Files | 98.9 GB | 17620 | Files containing videos or animations |
| Office Files and Documents | 9.2 GB | 10969 | Documents and files of office programs and PDFs |
| Miscellaneous Files | 5.6 GB | 24140 | Unknown file types |
| Audio Files | 4.7 GB | 12231 | Files containing music, sounds or playlists |
| Text Files | 1.8 GB | 1774700 | Plain text files, log files |
| Mail Files | 1.4 GB | 11425 | Email messages and files of email clients |
| Internet Files | 984.1 MB | 19071 | Files related to the WWW, like HTML files |
| MacOS Files | 3.4 MB | 5 | Files which are typically used on MacOS system |
| Configuration Files | 258 Bytes | 2 | Files containing configuration settings |

Note: Image Files and Text Files count **includes** the TIFF productions images and the TEXT productions files. Expert analysis counts in this report account for these and they are **not** included in the metrics.

To put this into perspective, if a single lawyer were to dedicate 50 hours a week to review Discovery Production 11, spending just one minute on each page, it would take approximately nine years just to get a basic understanding of what is included. If two lawyers were to work on it, each spending only 30 seconds per page and working the same hours, it would still take about two years to conduct a preliminary review of this new batch of evidence. To put it simply, Discovery Production 11 is an unmitigated disaster.

| Discovery Production 11 | Minutes | Hours | Weeks (@ 50 hours/Week) | Years |
|---|---|---|---|---|
| 1 attorney @ 1 minute/page | 1,414,593 | 23,576 | 471 | 9 |
| 1 attorney @ 30 seconds/page | 707,296 | 11,788 | 235 | 4.5 |
| 2 attorneys @ 1 minute/page | 707,296 | 11,788 | 235 | 4.5 |
| 2 attorneys @ 30 seconds/page | 353,648 | 5,894 | 117 | 2.2 |

The non digital/paper age equivalent of what the government has just done and tried to pass off as a discovery "production" would be if the

---

**A**, and his Affidavit as **Exhibit B** ("Russo Affidavit"). Relevant here, Mr. Russo is a former Information Technology Specialist at the United States Attorney's Office.

[3] **Note**: as explained below, the actual page count may exceed 10,000,000 pages.

2

government opened a conference room filled with hundreds of banker's boxes of the defendants' records, family pictures and unopened mail, and invited defense counsels to inspect it, where the boxes were mislabeled or not labeled at all, not indexed, and the documents inside were out of order.

### RELEVANT BACKGROUND

The relevant events in this case occurred between January and August 2020—during the height of the COVID-19 pandemic. Unsurprisingly, the individuals involved in the alleged criminal conspiracy mostly communicated via phone calls, text messages, and emails. Any alleged plot to bribe Governor Vazquez would surely be documented in at least some of the communication between the dozens of individuals involved in this case. The importance of the Electronically Stored Information ("ESI") found in the dozens of phones the FBI *collected* and *extracted* in this case cannot be overstated.

Despite the obvious importance of the ESI in this case, the government has yet to produce a single searchable phone extraction. Instead, it has produced millions of unsearchable and disorganized screenshots of text messages.

This is not to say that the government has been resting on its laurels. Indeed, it has spent the last 17 months peppering defense counsels with millions of unsearchable and disorganized documents. The government's discovery log is 37 pages long, and there have been over 11 separate productions containing over 10 million pages. Appearances, however, can be

3

deceiving. The government's leaky faucet approach to discovery production has resulted in a drip drip drip of evidence that is mostly undecipherable, disorganized, mislabeled, and unsearchable.

## DISCOVERY PRODUCTION 11

### I. THE LARGEST AND MOST DISORGANIZED PRODUCTION TO DATE.

Discovery Production 11 was produced in the 'database load file' format, a method recognized and utilized in legal contexts for managing electronic information. However, despite this format being a standard in the legal industry, it permits a considerable degree of variation in how the information is processed and ultimately presented to the reviewer. This variability significantly hinders the review process, whether one is examining the data in its presented order or otherwise.

The organization and production methodology used for Discovery Production 11 are particularly deficient. This has resulted in a dataset that is so poorly structured that even the most advanced Artificial Intelligence (AI) technologies would be unable to effectively navigate or analyze it. This situation presents a classic example of the pitfalls of improper electronic information management in legal discovery, showcasing the need for more stringent standards and oversight in ESI production.

Discovery Production 11 was produced on a BitLocker encrypted hard drive. Upon decryption, there are two (2) folders:

📁 2400003485_231213_Govt_Production_011 Part 1

📁 2400004102_231213_Govt_Production_011 Part 2

Each folder included the standard structure of files/folders that replicate a production of ESI in "database load file" format.

**Part 1** – 692,479 Documents – 925,267 Pages* - 218GB

**Part 2** – 426,356 Documents – 489,327 Pages* - 169GB[4]

The page count provided in the report does not accurately represent the actual amount of information produced. This discrepancy arises because the report often includes extra pages that are used to separate larger documents or those in a specific preferred format, **leading to a total page count that is significantly higher than initially reported**. Additionally, the method used by the government to calculate the page count is misleading. It counts the number of TIFF image files, which does not always correspond to the number of actual document pages. For instance, a single entry in the production, labeled as **DOJ-0001189367**, is noted as having one page according to its file details. However, this entry is actually a placeholder for a much larger document, a PDF file that contains **81,861 pages** of data extracted from a device known as the 'Blakeman' device.[5]

## II. WOEFULLY DEFICIENT METADATA.

Discovery Production 11 is also missing important metadata fields. Metadata fields are crucial in the production of ESI during criminal cases.

---

[4] *See* Russo Affidavit, p. 2.
[5] *See* Russo Affidavit, p. 4.

5

First, metadata provides essential contextual information about a document or file, such as its creation date, author, modification history, and location data. This context can be vital in establishing the timeline and authenticity of evidence, helping to determine its relevance and credibility. Second, metadata facilitates efficient organization and searchability of large volumes of data. In complex criminal cases, where the volume of ESI can be overwhelming, having sortable and searchable metadata enables legal teams to quickly locate pertinent information, thereby streamlining the review process. Third, metadata can sometimes reveal information that isn't apparent in the document content itself, such as the original author of a document or the path of its transmission, which can be critical in proving the chain of custody or uncovering hidden connections.

Here, Discovery Production 11 consistently omits important metadata fields. For example[6]:

1. **DOJ-0001187148** – a 6,132-page Native PDF of what appears to be "Blakeman" WhatsApp Communications. The metadata contains blank entries for Custodian, From, To, and File Name. In addition to the missing fields, the page count field is 1.

2. **DOJ-0001187286** – a 11,217-page Native PDF of what appears to be "Blakeman" WhatsApp communications. The metadata provided

---

[6] *See* Russo Affidavit, pp. 7-11.

contains blank entries for Custodian, From, To, and File Name. In addition to the missing fields, the page count field is 1.

3. **DOJ-0001188765** – a 3,297-page Native PDF of what appears to be "Blakeman" WhatsApp Communications. The metadata provided contains blank entries for Custodian, From, To, and File Name. In addition to the missing fields, the page count field is 1.

4. **DOJ-0001189367** – an 81,861–page Native PDF of what appears to be "Blakeman" WhatsApp communications. The metadata provided contains blank entries for Custodian, From, To, and File Name. In addition to the missing fields, the page count field is 1.

5. **DOJ-0002316406** – a 665-page Text File Containing 20,827 Lines (All of these communications are also separately provided as DOJ-0002317071 - DOJ-0002333955 as (16,707 individual files with no metadata).

6. **DOJ-0001189102** – Placeholder – No File Name – Insufficient Metadata – contains 11.7 million characters and 396,000 rows of important WhatsApp communications.

7. **DOJ-0001207505** – a 3,465-page PDF similar to the others that had placeholders previously, but this document did not contain a placeholder and instead was fully imaged. The metadata provided contains blank entries for Custodian, From, To, and File Name. In addition to the missing fields, the page count field is 3,465.

Ultimately, the page count provided in the metadata fields is inaccurate and the findings of irregular placeholders and system files that were produced suggest that **the actual page count may exceed 10,000,000**. Additionally, some **important** files were hidden. **DOJ-0001188765** is the same type of document (with less pages) as **DOJ-0001207505**, yet it was processed with a placeholder (one page). It is uncommon to placeholder PDF files. Out of the approximately 1,118,835 (1,414,594 pages) documents produced, only 27 (160 pages) are fairly produced in terms of format (bare minimum).[7]

## III. THIS *MANNER* OF PRODUCTION WILL SERIOUSLY COMPROMISE MR. ROSSINI'S CONSTITUTIONAL RIGHTS.

Discovery Production 11 casts significant doubt on the government's adherence to its mandatory disclosure obligations as outlined in Rule 16, along with the established legal precedents of *Brady* and *Giglio*. It is clear, however, that the *manner* in which the government has produced voluminous records from electronic sources in this case, including phone extractions, hard drive extractions, and dozens of subpoena returns received from Google, Apple, Meta (WhatsApp), and other internet service providers, phone providers, and cloud storage providers, *does not* comply with Rule 16, *Brady*, or *Giglio*. Ultimately, the *manner* in which the government has produced discovery ensures that Mr. Rossini's constitutional rights to Due Process and Present a Defense will be seriously compromised at trial.

---

[7] *See* Russo Affidavit, pp. 5-6.

8

The government cannot hide exculpatory evidence in an undecipherable mass of information. For the first time in 17 months, defense counsel learned of a set of "hot documents" when the government mentioned them in its status report from December 22, 2023. [D.E. 435, p. 3].[8] The existence of these documents was never highlighted to defense counsels and is thus a clear violation of this Court's Rule 5 order, [D.E. 85], *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and Fed. R. Crim. P. 5. The government's disclosure obligations involve not only a substantive, but also a temporal element. *United States v. De La Cruz-Feliciano*, 786 F.3d 78, 87 (1st Cir. 2015) ("*Brady* also applies in cases where the government delays disclosure of relevant evidence"). Upon closer inspection, these hidden documents clearly contain exculpatory evidence:



---

[8] Equally troubling, the government's acknowledgment in its status report that members of the prosecution team selected a set of "hot documents" *before* implementing the filter review [D.E. 435, p. 3] brings into question whether the entire prosecution team should be recused for having accessed this evidence before a filter/taint team was put in place.

## THE DISCOVERY RULES

Inherent to Criminal procedure are certain constitutional liberty and due process interests, *see generally* U.S. Const. Amend. IV, V, VI, VIII. The Federal Rules of Criminal Procedure, "are to be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay," Fed. R. Crim. P. 2. The Rules were established to prevent "trial by ambush". *United States v. Noe*, 821 F.2d 604, 608 (11th Cir. 1987). The government's manner of producing discovery in this case, particularly production # 11, virtually ensures that will happen here.

Federal Rule of Criminal Procedure 16 governs discovery in criminal cases. That rule requires the government to produce a defendant's statement, in particular any written or recorded statement by the defendant in the government's possession, custody, or control that are known by the United States Attorney to exist, Fed. R. Crim. P. 16(a)(1)(B)(i). Other statutes, rules, and caselaw direct the government (and in some instances due to reciprocal discovery, the defendant) to produce other types of discovery. These are well known motions in a defense omnibus motion (for example, production of *Brady* and *Giglio* materials, *Jencks Act* materials and the timing of their production relative to the start of the trial or the testimony of a witness). The focus of this rule (and the others) is the type of records that the government needs to

produce rather than the *manner* of its production or the forms in which those records may be retained.

Here, the government has produced documents in a manner which makes it virtually impossible to identify the source, timestamp, datestamp, and custodian of most of the documents. Millions of pages are disorganized and unsearchable, and file names and locations provide unhelpful information as to their contents. Like Russian nesting dolls, there are seemingly never-ending layers of files and folders, making a review of the production virtually impossible.

The government's discovery log is similarly unhelpful. Despite Discovery Production 11 being the largest production to date, the government's discovery log fails to reasonably and fairly attempt to describe its contents:

| 11TH PRODUCTION (2023.12.19 All Defendants) | | |
|---|---|---|
| Diaz Documents: | | |
|     Proffer | DOJ-0001182145 | DOJ-0001182280 |
|     WhatsApp | DOJ-0001182281 | DOJ-0001182340 |
| Ghaffar Documents | DOJ-0001182341 | DOJ-0001182366 |
| Pre-Sentence Investigation Report: Joseph Fuentes | DOJ-0001182367 | DOJ-0001182390 |
| In-Scope Search Warrant Material (Serial 437, 1A-236) | | |
|     Phone: Blakeman | DOJ-0001182391 | DOJ-0001189367 |
|     Phone: Sanchez-Perez | DOJ-0001189368 | DOJ-0001211189 |
|     Phone: Vazquez-Garced | DOJ-0001211190 | DOJ-0001239791 |
| Search Warrant Return: Phone - Blasco-Montaña | DOJ-0001239792 | DOJ-0002051426 |
| Court documents - Rossini | DOJ-0002051427 | DOJ-0002051451 |
| Search Warrant Return: Apple - w.vazquezg@live.com | DOJ-0002051452 | DOJ-0002251650 |
| Search Warrant Return: Phone - Vazquez-Garced | DOJ-0002251651 | DOJ-0002596738 |

For example, the last three items on the list contain 811,634 pages, 200,198 pages, and 345,088 pages respectively. The pages are in different formats and out of order and contain virtually no metadata. There are hundreds of pictures of Governor Vazquez with her family and friends. In addition to the high 'page count,' there are at least 17,000 video files totaling

at least 160 hours; 12,000 audio files totaling at least 172 hours. With no relevant metadata fields provided, it is *impossible* to find a strategic starting point for review. Finding any relevant piece of evidence within those productions is akin to finding a needle in a haystack. The government is in a better position than the defense to organize this mass of information and present it in a manner that is searchable and identifiable. Here, the government has utterly failed.

While there is no express ESI regime, for criminal cases, *United States v. O'Keefe,* 537 F.Supp.2d 14, 18-19 (D.D.C.2008) (Facciola, Mag. J.); Daniel B. Garrie and Daniel K. Gelb, *E–Discovery in Criminal Cases: A Need for Specific Rules,* 43 Suffolk U.L.Rev. 393, 399–400 (2010), many courts have adopted the standard of Federal Rule of Civil Procedure 34(b)(2)(E)(ii)—which does address the standard for production of ESI—and found that, "the standard of Federal Rule of Civil Procedure 34(b)(2)(E)(ii) should apply here, that is the government produces this ESI "in a reasonably usable form or forms." While Rule 34(b)(2)(E) notes options for production as documents "are kept in the usual course of business," Fed. R. Civ. P. 34(b)(2)(E)(i)" *United States v. Briggs*, No. 10CR184S, 2011 WL 4017886 (W.D.N.Y. Sept. 8, 2011)

In *United States v. Stirling,* Case No. 1 :11-cr-20792-CMA (S.D. Fla. June 5, 2012), the government seized the defendant's computer pursuant to a search warrant and provided the defendant with a forensic copy of the hard drive. Before trial, an FBI analyst performed a forensic examination of the

12

hard drive, determined that the defendant had "chatted" with his co-defendants via Skype, extracted that information from the hard drive, and converted it into text format, which totaled 214 pages. According to the court, this information was "not readily available by opening the folders appearing on the hard drive." The government did not provide the Skype evidence to the defendant before trial in text format and did not use it in its case-in-chief. It did, however, notify the defendant that there was evidence on the hard drive that it would use to impeach him if he testified. The defendant testified, and in rebuttal the government used the text-format Skype chat log to impeach his testimony. In the court's view, "[p]roduction of something in a manner which is unintelligible is really not production," noting that the log "had a devastating impact" and "irreparably damaged [defendant's] credibility and his duress defense." *Id.* at 2. Following the jury's guilty verdict, the court granted a new trial under Rule 33 "in the interest of justice."

To help prosecutors and defense attorneys cope with the new challenges of electronic information, the Department of Justice developed a set of best practices for ESI discovery management in collaboration with the Office of Defender Services (ODS), Federal Defender Organizations (FDO), private attorneys who accept Criminal Justice Act (CJA) appointments, representatives of the Administrative Office of United States Courts, and liaisons from the United States Judiciary.

On February 13, 2012, the new Criminal ESI Discovery Protocol (Protocol)[9] was simultaneously issued by Deputy Attorney General James Cole on behalf of the Department, and representatives of ODS, FDO, CJA, as well as the federal judiciary.

The Protocol aims to achieve multiple objectives: streamline the process of discovery after indictment for both the government and criminal defendants, minimize expenses for both parties, enhance dialogue between prosecutors and defense attorneys regarding ESI discovery matters, prevent unnecessary pretrial disputes related to ESI discovery, establish consistent best practices for common issues, and safeguard the confidentiality of sensitive data disclosed during discovery.

The Protocol, for example, explicitly states that a table of contents has several key benefits in complex cases involving large quantities of ESI:

> If the producing party has not created a table of contents prior to commencing ESI discovery production, it should consider creating one describing the general categories of information available as ESI discovery. In complex discovery cases, a table of contents to the available discovery materials can help expedite the opposing party's review of discovery, promote early settlement, and avoid discovery disputes, unnecessary expense, and undue delay.

Protocol, Strategies and Commentary at 2.

---

[9] Department of Justice and Administrative Office of The U.S. Courts Joint Working Group on Electronic Technology in the Criminal Justice System, *Recommendations for Electronically Stores Information (ESI) Discovery Production in Federal Criminal Cases* (2012), available at https://www.justice.gov/archives/dag/page/file/913236/download.

The Protocol cites *United States v. Skilling*, 554 F.3d 529, 577 (5th Cir. 2009), as a key reference. In that case, the Fifth Circuit examined the government's obligations under *Brady* in relation to an ESI (Electronically Stored Information) database that spanned hundreds of millions of pages. Despite the vast size of the discovery provided by the government in *Skilling*, *it was in a digital, searchable format*. Additionally, the government highlighted a collection of key documents and indices. The court dismissed Skilling's argument that the government should have identified and provided exculpatory evidence from this extensive discovery, reasoning that the government was not more equipped than Skilling to locate such evidence. The decision, as stated at *Id.* at 577, is in line with similar judgments by other courts in cases where the government supplied searchable ESI discovery materials. *See, e.g., United States v. Warshak,* 631 F.3d 266, 297 (6th Cir. 2010); *United States v. Ohle,* 2011 WL651849, at 4 (S.D.N.Y. Feb. 7, 2011). The *Skilling* court went on to state "it should go without saying that the government may not hide *Brady* material of which it is actually aware in a huge open file in the hope that the defendant will never find it." 554 F.3d at 577.

The Protocol advises that ESI obtained from external sources like banks, mortgage companies, and telecommunications providers should be shared in its original form or in a "reasonably usable form," echoing the language of Federal Rule of Civil Procedure 34(b)(2)(E)(ii). For instance, emails that are

15

received in their native format can be shared as such or converted to other formats like searchable PDFs, or TIFF images accompanied by OCR text and a "load file." The Protocol defines a load file as a tool for importing images or data into databases, emphasizing that load files must be compatible with specific software formats for effective use by the recipient. Protocol, at 21.

Here, perhaps the most troubling finding of the Russo Affidavit is that Discovery Production 11 itself suggests that the government *could have* produced it in a much more usable form:

> Discovery 11 includes at least 684,595 documents with a "FILE PATH" showing ".ufdr" as the attendant file type, as well as various different "extraction reports" from Cellebrite and Axiom. This suggests that most of this production can be produced in a much more useable and efficient format – UFDR native format.[10]

The government here, unlike in *Skilling*, has failed to produce Discovery Production 11 in any kind of *searchable format*. Discovery Production 11 is neither searchable nor organized in any discernible manner. The *manner* in which the government has produced Discovery Production 11 is no different than attempting to drink water through a firehouse. It is simply unreviewable.

## Conclusion

The danger associated with the government's failure to provide searchable discovery cannot be overstated. The inability to search through millions of documents makes it exceedingly difficult to find relevant, let alone exculpatory, evidence. Now, weeks from a possible trial date, the government's

---

[10] *See* Russo Affidavit, p. 4.

16

11th discovery production is beyond the pale and should be excluded from the trial.

**WHEREFORE**, Mr. Rossini requests that this Court grant his Motion to Exclude the government's latest discovery dump.

> Respectfully submitted,
>
> */s/ Lydia Lizarribar Masini*
> **LIZARRIBAR MASINI LAW OFFICE**
> G-14 O'Neill Street, Suite A
> San Juan, PR 00918
> (787) 250-7505
> lizarribarlaw@gmail.com
>
> **STUMPHAUZER KOLAYA NADLER & SLOMAN, PLLC**
> Two South Biscayne Boulevard, Suite 1600
> One Biscayne Tower
> Miami, FL 33131
> Telephone: (305) 614-1400
> Facsimile: (305) 614-1425
>
> /s/ *Michael B. Nadler*
> Michael B. Nadler
> Fla. Bar No. 51264
> mnadler@sknlaw.com
> *Admitted pro hac vice*
>
> /s/ *Juan J. Michelen*
> Juan J. Michelen
> Fla. Bar No. 92901
> jmichelen@sknlaw.com
> *Admitted pro hac vice*
> *Attorneys for Mark T. Rossini*

## CERTIFICATE OF SERVICE

I certify that on January 16, 2024, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF, causing a copy to be served on counsel of record.

/s/ *Juan J. Michelen*
Juan J. Michelen