```
 1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF PUERTO RICO
 2     :_____:

 3       THE UNITED STATES OF AMERICA,     :
                          Plaintiff,       :
 4                                         :
                       vs.                 :    Case No: 22-CR-342 SCC
 5                                         :
         [1] WANDA VÁZQUEZ-GARCED, et al, :
 6                       Defendant.        :
       :_____:
 7
                       TRANSCRIPT OF STATUS CONFERENCE
 8        HELD BEFORE THE HONORABLE JUDGE SILVIA L. CARREÑO-COLL
       CLEMENTE RUIZ-NAZARIO U.S. COURTHOUSE, SAN JUAN, PUERTO RICO
 9          TUESDAY, JANUARY 16, 2024, BEGINNING AT 3:35 P.M.
       :_____:
10

11     A P P E A R A N C E S:

12     For the United States of America:

13            Assistant U.S. Attorney Ryan R. Crosswell

14            Assistant U.S. Attorney Nicholas W. Cannon

15            Assistant U.S. Attorney Seth Erbe

16

17     For Defendant [1] Wanda Vázquez-Garced:

18            Attorney Luis A. Plaza-Mariota

19            Attorney Ignacio Fernández-De-Lahongrais

20            Attorney Peter John Porrata

21            Attorney Edgar L. Sánchez-Mercado

22

23     For Defendant [2] Julio M. Herrera-Velutini

24            Attorney Sonia Torres-Pabón

25            Attorney Lilly Ann Sánchez
```

1    A P P E A R A N C E S   C O N T I N U E D:

2

3    For Defendant [3] Mark T. Rossini

4         Attorney Michael B. Nadler

5         Attorney Juan J. Michelen

6         Attorney Lydia Lizarribar-Masini

7

8    ALSO PRESENT:

9         Maria Elena Pintado-Espiet, Courtroom Deputy

10   Clerk

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Status Conference

1          THE COURTROOM DEPUTY:  All rise.  Court is
2     still in session.
3               (The Court enters the room.)
4          THE COURT:  Please be seated.  Maria Elena,
5     you can call the case.
6          THE COURTROOM DEPUTY:  Calling criminal case
7     22-00342 for a status conference.  USA versus
8     Vázquez-Garced, et al.  Parties please identify
9     yourselves for the record.
10         MR. CROSSWELL:  Good morning, Your Honor.
11    Ryan Crosswell, Nick Cannon, and Seth Erbe for the
12    United States.
13         MR. ERBE:  Good morning, Your Honor.
14         MR. CANNON:  Good morning, Your Honor.
15         THE COURT:  Good afternoon.
16         MR. PLAZA-MARIOTA:  Good afternoon, Your
17    Honor.  Luis Plaza for the defense of Wanda
18    Vázquez-Garced.  Along with me is Peter John Porrata,
19    Edgar Sánchez, and Ignacio Fernández.
20         THE COURT:  Good afternoon.
21         MR. PORRATA:  Likewise.
22         MS. SÁNCHEZ:  Good afternoon, Your Honor.
23    Lilly Ann Sánchez on behalf of Julio Herrera-Velutini
24    along with my co-counsel Sonia Torres.
25         THE COURT:  Good afternoon to you.

Status Conference

1          MS. TORRES-PABÓN:  Good afternoon, Your

2     Honor.

3          MR. NADLER:  Good afternoon, Your Honor.

4     Michael Nadler, Juan Michelen, and Lydia Lizarribar

5     for Mark Rossini.

6          THE COURT:  That's a hard one to roll your

7     Rs.

8          MR. NADLER:  I'm getting used to it, Your

9     Honor.

10         THE COURT:  All right.  So good afternoon to

11     everyone.  I would like to start with some

12     housekeeping matters and so let's start with -- I

13     would like counsels for Herrera-Velutini to direct

14     your attention to three filings at Dockets 413, 428,

15     and 431.  These are just filings with certified

16     translations and I don't think they are compliant

17     with the local Rule 5(c).  So please review the three

18     specific ways in which you can comply with Rule 5(c),

19     and the fourth would be to have a stipulation from

20     the government.  So if it's compliant, let me know

21     why it falls within one of these three categories.

22     If it's not, you can choose to have the government

23     stipulate or you can re-file with a certified court

24     translator certifying.

25              Okay.  Let's address now the issue of

Status Conference

1    redactions.  We have the outstanding issue of the

2    filings at Docket 262, 301, and 340.

3    Mr. Herrera-Velutini's motion to dismiss, the

4    government's response to the motion to dismiss at

5    301, and the reply at 340.  I have received the

6    proposed redactions but I have some issues with these

7    redactions.  Namely, the government has filed the

8    redactions leaving some names.  I'm not sure if this

9    was on purpose, if we should further discuss this,

10   Mr. Cannon.

11           So ultimately I will grant the request to

12   have these documents -- the motion to dismiss, the

13   response, and the reply -- filed redacted for public

14   viewing; however, information pertaining to

15   informants, Rule 6, grand jury material, and

16   noncharged conduct will be excluded regardless of

17   whether the parties redacted those portions or not.

18   I believe ultimately it is up to the Court to make

19   sure that the information that is out there is for

20   public consumption and not that because of an

21   oversight or some other reason some of that

22   information is there.  For that purpose, while we

23   hold the status conference, please make sure that any

24   specific information pertaining to grand jury

25   material, informants, or noncharged conduct is not

Status Conference

1    discussed openly in open court.

2           Okay, so that's the ruling that I will make

3    once I am clear on what all the redactions should be.

4    If the government wants to be heard on some of the

5    items that I mentioned that perhaps it was not --

6    because you didn't detect it and it's because it was

7    intentional then I need to hear you by sidebar.

8           MR. CANNON:  I'm suspecting it was probably

9    unintentional, Your Honor.

10          THE COURT:  It was an oversight.

11          MR. CANNON:  Yeah.  I'll take a look at them

12   today and make sure that there's -- I don't feel

13   differently about it, once I take a look at what

14   you're talking about, and we can let the Court know.

15   I'll file an informative motion and I'll consult with

16   counsel if there's an issue.

17          THE COURT:  Okay.  If I don't hear from you

18   then I will make those additional redactions, grant

19   the motion, and make public the redacted versions of

20   these three documents.

21          Yes?

22          MS. SÁNCHEZ:  Thank you, Your Honor.  We

23   also just filed a motion, an unopposed motion, to

24   file the latest motion to compel with the redactions

25   as well, because we went -- we traded redactions with

Status Conference

1    the government.  The government agreed with the

2    redactions and said it was ready to go.  So I don't

3    know if the Court wants to look at that one as well,

4    make sure there's no oversight there.

5               THE COURT:  Okay, let me go to the docket

6    quickly.  And this was filed just like right now.

7               MS. SÁNCHEZ:  Right now.

8               MR. CANNON:  Literally right now.

9               THE COURT:  And Mr. Rossini filed one this

10   morning.  All right, let's take it one at a time.

11              So it's at Docket 454.  It's an unopposed

12   redacted version of the motion to compel.  So the

13   government is in agreement?

14              MR. CROSSWELL:  Yes, Your Honor.  We

15   reviewed it and we didn't notice anything that they

16   had missed to redact.

17              THE COURT:  How about the exhibits attached

18   to the motion?  There were no redacted versions

19   produced for the Court's review.  Does that mean that

20   the parties do not want to have this public?

21              MS. SÁNCHEZ:  We redacted the exhibits as

22   well.

23              THE COURT:  On this last filing?

24              MS. SÁNCHEZ:  Yes.

25              MR. CROSSWELL:  Yes.

Status Conference

1        THE COURT:  Ah, I need to review it then
2    because I haven't.  So I'll review it and if I don't
3    see anything that should be redacted additionally
4    then it will be redacted and made public.  With the
5    redactions, that is.
6        Now, government --
7        MS. SÁNCHEZ:  I think that the motion was
8    not filed restricted right now.  Do you want us to
9    pull it and restrict it so that you can look at it
10   first?
11       THE COURT:  The redacted version was not
12   filed restricted?
13       MS. SÁNCHEZ:  I don't think -- I'm looking
14   on my computer.  It doesn't look like that.
15       MS. TORRES-PABÓN:  It wasn't, Your Honor,
16   I'm sorry.  The government had agreed we file it open
17   as-is, but we can pull it for the Court to review.
18       THE COURT:  Let me give it a quick glance.
19       So I would like to have the government on
20   the record and then there's no need to pull it and
21   re-file.  If the government reviewed it --
22       MR. CANNON:  We reviewed it today, Your
23   Honor, and we have no objection.  I think the
24   exhibits were heavily redacted so if you see it it's
25   entire pages basically.

Status Conference

1    MS. SÁNCHEZ:  Right.

2    MR. CANNON:  We're satisfied, Your Honor.

3    THE COURT:  All right.  So there's no need

4   to pull it and re-file it.  I'm going to trust that

5   you were all very diligent and that the government is

6   onboard and that it's all fine.  So that would be 454

7   which is then granted.

8    Now, regarding the government's

9   representation during the last status conference that

10   all nonpotentially privileged search warrant

11   materials seized from each of the three defendants

12   has been produced, that would be at Docket 435, pages

13   1 and 2.  And then what was not produced which was

14   listed at 435, page 3, paragraph 6.  The government

15   had represented that it would be produced by

16   December 22nd.  Did this happen?

17    MR. CROSSWELL:  Your Honor, no.  So on the

18   status report filed on the 22nd we listed what has

19   been produced and what's pending.  So there's still

20   our foreign accounts and material that the filter

21   team is still reviewing.  And I'm happy to update you

22   on that if you'd like.

23    THE COURT:  Yes.

24    MR. CROSSWELL:  Okay.  So, Your Honor, the

25   status report at that time there was 11 items pending

Status Conference

1    some of which are search warrant returns and some of

2    which are other subsets of documents.  Within the

3    last three or four days a filter team has released to

4    us three more searched accounts, which we are now

5    processing.  So when the filter team releases it to

6    us it takes us about a week to produce it in

7    discovery; that's sort of the two-step process.  So

8    we've received three more and then a fourth I believe

9    we're receiving this week, and then a fifth we expect

10   to receive in the next two weeks.  So I guess bottom

11   line is that leaves of the 26 items that went through

12   the filter review we're down to the last five.

13        THE COURT:  Last five.

14        MR. CROSSWELL:  Yes.

15        THE COURT:  Can you give me an estimate of

16   when do you think you're going to conclude this

17   production.

18        MR. CROSSWELL:  Sure.  So, uhm, we talked to

19   our filter attorney this week and she requested until

20   March 1st.  Your Honor, I think it's going to happen

21   sooner than that.  And the reason I say that is

22   because since the last status they've turned out 18

23   different accounts or sets of documents, so they're

24   working extremely fast.  They have four attorneys and

25   three paralegals; three of the attorneys are Spanish

Status Conference

1    speakers.  So there is a language barrier, there's

2    the amount of information, and then there's also some

3    technical complication sometimes; but, nevertheless,

4    between our last status and to this point it's been

5    18 accounts or sets of documents.  And, as I said,

6    after the next two which we're supposed to receive in

7    the next two weeks that takes it down to five.

8             So the filter attorney asked that we be

9    given until March 1st.  I'm pretty confident we can

10   finish before that but I just want to set reasonable

11   expectations.

12            THE COURT:  Let me hear the defense.

13            MS. SÁNCHEZ:  Your Honor -- oh, Luis, would

14   you --

15            MR. PLAZA-MARIOTA:  Do you want to speak?

16            MS. SÁNCHEZ:  Or you.

17            MR. PLAZA-MARIOTA:  I'm first in the

18   indictment.

19            MS. SÁNCHEZ:  Go ahead.

20            THE COURT:  Mr. Plaza.

21            MR. PLAZA-MARIOTA:  May I approach the

22   lectern.

23            THE COURT:  You may.

24            MR. PLAZA-MARIOTA:  May it please the Court.

25            THE COURT:  You may.

Status Conference

 1          MR. PLAZA-MARIOTA:  Your Honor, I have good

 2     news and bad news.  Let's go with the good news

 3     first.

 4          THE COURT:  Good news first.

 5          MR. PLAZA-MARIOTA:  Okay.  As Your Honor

 6     knows, we have consistently and in good faith worked

 7     with the government through the submission of letters

 8     pursuant to the local rules.  And it seems to me that

 9     we have developed a very good relationship with the

10     prosecutors.  I mean, they are straight shooters, we

11     are shooters, we're dealing well with them.  We have

12     been requesting texts, precisely texts.

13          THE COURT:  Text messages.

14          MR. PLAZA-MARIOTA:  Text messages.  As Your

15     Honor knows, in the indictment, text messages are

16     being used as part of the overt acts and the whole

17     information of the alleged commission of the offense.

18     Well, on September 22nd, September 23rd, we requested

19     to the government not only the texts that appear in

20     the indictment but what preceded and what happened

21     after the texts, so we can have the whole

22     conversations.  And basically we received a response

23     from the government that they were going to supply

24     that information as soon as the filter team would

25     work on the specific phones of the individuals that

Status Conference

1   appear quoted in the indictment.  These are

2   individuals that either pled guilty already in the

3   indictment or are witnesses cooperating for the

4   government.  Well, we received recently submission

5   No. 11 which is --

6           THE COURT:  Production 11.

7           MR. PLAZA-MARIOTA:  We're moving to the bad

8   part, okay.  The submission 11, voluminous doesn't

9   really explain what we received.  We know that there

10  somewhere appears most of the information that we

11  have been requesting through the local rules.  So

12  that's the good news.

13          THE COURT:  The text messages, yes.

14          MR. PLAZA-MARIOTA:  The problem is that in

15  the way it's been produced it's unsearchable.  I mean

16  it doesn't have nothing in chronological order or in

17  a way that you can spend some time looking at what

18  the index says and you will find it.  To give you an

19  example, for example the index could say that there's

20  something regarding, just to say a name,

21  Mr. Blakeman.  And you will go there and when you

22  open or try to open that it's 85,000 documents there

23  instead of one page.  If you see the index you will

24  say it's one page, but when you go there it's --

25  it's -- it's something very voluminous.

Status Conference

1          So it has become a real problem trying to

2     figure out how to deal with that.  I know that

3     counsel for Herrera already filed a motion.

4          THE COURT:  Well, Mr. Rossini filed a motion

5     saying that it's a million pages.

6          MR. PLAZA-MARIOTA:  Well, it seems to be --

7          THE COURT:  Let me ask Mr. Crosswell

8     something.  Mr. Crosswell, when you stated before

9     that March 1st is the expected date from the filter

10    team to make these productions, does that include

11    this type of evidence, the text messages; or this is

12    a separate category?

13         MR. CROSSWELL:  It would include the

14    non-privileged text messages from all the rest of the

15    offense.  And so -- and I know that Mr. Plaza is

16    probably talking about all the accounts.  The

17    Governor Vázquez's texts have all been produced, her

18    phones have all been produced.  Something that I

19    think that he's getting at, and also Mr. Rossini

20    writing the motion today, is the searchability.  And

21    what is remaining for the phones is we are producing

22    and using a software platform called UFED Reader

23    which essentially makes it easier to read the

24    materials.  So some of what's been produced is not

25    with the UFED Reader, but when they get the full copy

Status Conference

1   of the phones they'll have the UFED Reader software

2   which helps with that.

3            So I think in terms of searchability and

4   readability, it was produced on the 22nd, Your Honor,

5   there was a holiday.  We have been -- as he

6   mentioned, we've worked with him and the other

7   defense counsel too whenever there's been discovery

8   issues and we'll continue to do that, if there's any

9   problem reading the material.

10           But to answer your specific question, yes,

11  that would mean by March 1st they'll have all the

12  non-privileged material, and then the next step is

13  for them to assert privilege in a potential --

14           THE COURT:  So Mr. Plaza.

15           MR. PLAZA-MARIOTA:  Yes, ma'am.

16           THE COURT:  When you address this issue of

17  the latest production and the problems you've been

18  having with reviewing this, I would also like you to

19  let me know what is your position regarding this

20  production by March 1st.

21           MR. PLAZA-MARIOTA:  Very well.  Very well,

22  Your Honor.  Now, in the meantime I can already tell

23  you that it doesn't seem feasible that we are going

24  to be able to use submission No. 11 because of the

25  huge --

Status Conference

1          THE COURT:  You won't be able to use it?

2          MR. PLAZA-MARIOTA:  I don't think.  I really

3    don't think so.  I mean -- I have the impression that

4    maybe the prosecutors haven't seen what the technical

5    people sent us, but I imagine that if they see it by

6    themselves they will probably agree as to something

7    that we are saying here; because we are not making

8    this up.  I mean, it's something very difficult to

9    navigate.

10         And then -- just to give you another

11   example, Your Honor, we received in December the

12   images for the phone of our client.  That would also

13   include the cloud.  The filter team is giving us a

14   deadline of January 26th to assert the privilege.

15   The cloud, we are reviewing in excess of 50,000

16   images; and the phone like 49,000.  I've never been a

17   member of a filter team, but it's -- it's -- it's --

18   I mean the filter team will tell you, Check in this

19   Excel sheet this information, and when you enter

20   there, there could be 5,000 messages in what seems to

21   be like one item.

22         So we are trying to comply with the filter

23   team's deadline.  I mean, we were preparing for trial

24   when all this happened.  So it's -- the sheer volume

25   of things that we are receiving that doesn't seem to

Status Conference

1  have like anything to do with the case is -- is -- is

2  great.

3         And then of course there's always the

4  problem that as soon as the government sends us the

5  submission we have the due diligence and we have the

6  obligation to look into it and to look at it, you

7  know, in real terms.  And it holds, it holds, our

8  preparation for trial.

9         We are inclined, Your Honor -- reading

10 Mr. Rossini's motion that was submitted today, we are

11 inclined in joining what is -- what appears there,

12 because the motion is very technical and it explains

13 in very technical terms what we are facing with the

14 information and, it seems to me, accurately reflects

15 the possibility that Brady material or things that

16 are really important are somehow buried in that

17 avalanche of documents, in that lake of evidence that

18 we have received.  So.

19        THE COURT:  Let me ask the government again.

20 Mr. Crosswell, this motion at 453, Mr. Rossini's

21 motion, have you had a chance to review it?

22        MR. CROSSWELL:  I did, Your Honor, briefly.

23 And one thing I do want to point out, which is what I

24 was alluding to a moment ago, and we have been

25 scheduled to talk with Mr. Rossini's counsel and we

Status Conference

1    just -- uhm, I don't think that we got a chance to

2    discuss this with him.  But one thing it mentions is

3    that it would help to have UFED Reader to review this

4    material.  And the point I was just making was in the

5    next production when we get the entire copies of the

6    phones they will actually have that UFED Reader.

7           And so what we've been doing, for example,

8    if we have InScope messages from a phone, we've been

9    trying to push that out as soon as we get it from the

10   filter team.  And so counsel will receive that and

11   they say, you know, UFED Reader would be nice to

12   review this, and the point we're trying to make is

13   they're going to get that when they receive the

14   entire copy of the phone.  And that's why I think the

15   point we're trying to make here is that if there is

16   some difficulty or technical issue with the

17   production -- counsel may be right, we may not be

18   aware of it.  I've looked through the defense's

19   production today after Mr. Rossini filed his motion

20   to see if I could see what he was referring to and I

21   think that's something that we can confer with him

22   on.

23           THE COURT:  Do you think that if it goes

24   through UFED it will be more readable and more

25   manageable?

Status Conference

1          MR. CROSSWELL:  Well, that's exactly what
2    Mr. Rossini's requesting is; and, yes, I do.
3          THE COURT:  Okay, let me hear from
4    Ms. Sánchez regarding this issue.  We will take them
5    one by one.
6          MS. SÁNCHEZ:  Okay, Your Honor, as the Court
7    alluded to beforehand, we filed a motion to compel or
8    exclude everything from Production 11 onward back on
9    the December 27th.  It's the motion that we talked
10   about earlier regarding the redactions right now
11   today because there's several layers of problems here
12   with the discovery, okay.  Leaving aside the fact
13   that Production 11 is 1.4 million Bates stamped
14   documents, which is almost unbelievable that that
15   would be produced a year and a half after this case
16   was indicted, the local rule requires that discovery
17   being produced by the government be within seven
18   days.
19         And on top of everything, Rule 5(f) requires
20   that Brady be produced immediately as well.  And that
21   order was issued by Chief Judge Arias back on
22   September 7th of '22.  And here we are almost
23   18 months later and we received 1.4 million
24   documents.
25         And, as Mr. Rossini's motion points out, you

Status Conference

1    open up one Bates stamp number and so you think it's

2    one document, it turns out that it's one Bates

3    stamped document and behind it, in one example,

4    there's 88,000 pages that are not Bates stamped.  So

5    the total of this production which is now at 5

6    million pages is actually, by the expert's

7    calculation of what he's looked at that last hard

8    drive we got, is somewhere around the neighborhood of

9    10 million documents which is what he's calculated.

10           And it' completely, number one, untimely,

11   prejudicial.  All of this should have been produced,

12   had been ready to produce beforehand, before this

13   case was indicted.  The search warrants are back from

14   2020 and the indictment was not until August 3rd of

15   2022.  This all should have been put together in some

16   fashion and had been ready to produce immediately.

17           Moreover, it's not just the search warrant

18   returns that we're getting in here; there are

19   documents that are -- documents from the case and

20   agent 302s that are dated from '20 and '21 that we're

21   just getting now in this production a year and a half

22   later hidden within this, like, avalanche or sea of

23   documents.  There's got to be some sort of recourse

24   as to what the government has done in this case.

25   We've been filing motions regarding the government's

Status Conference

1    actions in this case since back in July, and this

2    last discovery issue is the last thing that is

3    completely unacceptable.

4            And for the government somehow to say that

5    because the documents had to go through a privilege

6    team filter team that's what has delayed it, they

7    should have gone through a filter team from the

8    moment that they received these phones initially.

9            And the Court needs to understand also that

10   they're parsing out privilege versus non-privilege.

11   So they're saying that the non-privileged documents

12   may be all turned over by March 1st, but the

13   privileged documents that everybody has to go through

14   and do a privilege log on -- which Mr. Plaza just

15   referred his client's alone is 100,000 e-mails that

16   he has to review and put in a privileged log, and

17   then that privileged log has to be reviewed by the

18   government, and then if they have any objections on

19   that it has to come to the Court, the Court has to

20   decide what is privileged or not, and then once that

21   ruling happens then it's finally when we get those

22   privileged documents that may not be privileged or

23   the privileged logs themselves.

24           For Mr. Herrera's phone, we just received --

25   this is our second privileged log that we have to

Status Conference

1    prepare.  The first one was about 4,000 e-mails, and

2    this one is 11,000 e-mails that we have to review and

3    prepare privileged log.  Our deadline was

4    January 23rd; I asked the filter team for at least

5    another four to six weeks because there's, you know,

6    11,000 e-mails.  It's not just reviewing them, you

7    have to put them on the spreadsheet with all of the

8    different categories how a privilege is logged,

9    they're requiring.

10           And, more significantly, I don't understand

11   why the government decided to do this filter team

12   review like backwards.  Frances Díaz, their main

13   cooperator, and one of the main individuals in this

14   case, her phone -- nothing from her phone or Icloud

15   has been turned over or reviewed yet.  Two of the

16   other very important witnesses in this case, Lillian

17   Sánchez and Marisol Blasco, which are key witnesses

18   and worked at the governor's office with Ms. Vázquez,

19   their phones haven't been done and produced.

20           At this point, it's 18 months later and, as

21   we've stated in our motion, I think everything should

22   be excluded from Production 11 onward and it cannot

23   be used in the Government's case in chief at this

24   point.  It is completely outrageous and contrary to

25   case law, the local rules, the federal rules.  And it

Status Conference

1    has been highly prejudicial to my client to be under

2    indictment for this significant period of time and

3    for, to this date, the discovery -- the main pieces

4    discovery directly at him have not been turned

5    over -- including *Brady* information that we found

6    hidden within this 1.4 million pages that they say

7    they have, which is probably closer to 10 million,

8    pursuant to the expert, but I'll let Mr. Rossini

9    speak to that with Mr. Nadler as counsel.

10           THE COURT:  Counsels for Mr. Rossini, in

11   addition to the motion you already filed, 453, is

12   there anything else you would like to add regarding

13   this issue before I allow the government to respond?

14           MR. NADLER:  Quickly, may I.

15           THE COURT:  You may.

16           MR. NADLER:  May it please the Court.

17           THE COURT:  You may.

18           MR. NADLER:  We did ask for the UFED files.

19   They will make the discovery infinitely more

20   searchable.  The issue here is not whether we can now

21   search it, which we need for our case, but it's the

22   volume that's being produced.  It is physically

23   impossible.  And Mr. Cannon and Mr. Crosswell have

24   been generous, have been gracious.  We've had good

25   conversations.  This is something that should have

Status Conference

1    been done at the beginning.  We are now 18 months in.

2    It is physically impossible even for the government

3    to have reviewed all of this.

4              And that's -- the problem now is we as the

5    defense are doing a relevance review.  They're giving

6    us everything -- pictures of families.  There are

7    things that are completely irrelevant to the case.

8    That is what's happening in this non-privileged

9    production.  There are things that clearly have

10   nothing to do, and the only way we're able to find

11   this stuff is like throwing a dart at a dart board.

12   We are randomly choosing things to review and that's

13   how we're finding now what is relevant for our case.

14   That's what's starting to happen.

15             So when we talk about documents or

16   Productions 1 through 10 at this point document or

17   Production 11 contains more pages than the previous

18   ten.  It was almost physically impossible for just

19   the two of us to review ten.  There were some things

20   that were more searchable.  Now 11, even if it's

21   produced in the version that it should have been at

22   the beginning, it's going to be insanely difficult to

23   review all of that material.  We are essentially

24   doing searches and hoping we're finding relevant

25   documents because there's so many irrelevant things.

Status Conference

1    So what we're asking for is, yes, that production for

2    us to determine whether there's anything for our case

3    in chief, but because of the point we're at what

4    we're also requesting is at least for the stuff from

5    11 and going forward the government should not be

6    allowed to use that in their case in chief going

7    forward.  Thank you, Your Honor.

8            THE COURT:  Thank you.

9            Mr. Crosswell.

10           MR. CROSSWELL:  Yes, Your Honor.  Thank you.

11   So the first thing -- I want to step the Court back.

12   Way back in November 22nd, Judge Arias ruled that all

13   production of searchable materials stop while he

14   decided on defense's motion for filter.  Actually

15   they had asked for a special master.  So at that

16   point we could not produce any of this discovery.

17   Then in February he ruled that we would turn over the

18   filter review to a separate component of the

19   Department of Justice, which we did.  By the time we

20   got the last filter terms from the defendants, it was

21   May and then the FBI sent the accounts to the filter

22   team in June.

23           Since that time, they have been working at

24   warp speed with translations, with things that are

25   not in their language, through 26 accounts.  It is a

Status Conference

1    lot of material, but I also want to put this into

2    context.  When we talk about a million pages, each

3    text messages constitute one page.  So, for example,

4    if I text Mr. Cannon before court and say, Good

5    morning, can you pick me up for court?  And he

6    responds in three text messages, that's five pages.

7    That takes five seconds to review.  And I'm not

8    diminishing the fact that they have a lot of data to

9    go through.  What I'm trying to say is the total

10   discovery produced at this point is about 500

11   gigabytes which is about the size of half a

12   commercial hard drive.  So it is a lot, but it is

13   certainly not compared to some white collar cases

14   where you are talking about terabytes of information.

15   That's not what this is.  That said, we can only

16   produce it as fast as the filter team gives it to us.

17          And so, you know, there is Rule 16 material

18   that's being produced for the first time, but that's

19   because we have just received it from the filter

20   team.  The issue is, this was ordered by Judge Arias.

21   This was what he wanted, and so this is what it takes

22   and it takes time.  As I mentioned, we have four

23   filter attorneys working on this.  But the defense

24   can't have the full filter review and also have

25   material in November 2022 when Judge Arias rules we

Status Conference

1    have to do this filter production.

2           So, as I mentioned earlier, we are nearly

3    done.  After we produce the next three accounts we

4    received we have five left.  We will continue to work

5    with the defense for any accounts that they're having

6    trouble reading, but we can't produce things

7    immediately and also run them through the filter.

8           And the bottom line about the filter, I mean

9    the defense has complained about that's been done

10   before, this has all been litigated.  This has been

11   litigated and Judge Arias ruled that the filter

12   review will be done by a different component.  And so

13   they turned over filter terms.  And in the case of

14   Mr. Herrera he's turned over one hundred filter terms

15   based on different attorneys that have represented

16   mostly his bank at some point.  The point being is,

17   we have run that not only on his own accounts but the

18   accounts of, for example, Frances Díaz who consented

19   and voluntarily turned over her phone and her e-mail.

20   So we are going so far beyond that we are actually

21   running his terms against her material.  That's part

22   of the holdup.

23          And if Mr. Herrera doesn't want that review

24   to be done we could produce it next week, but I guess

25   the point being is we can't produce it immediately

Status Conference

1   and also run these filter terms.  And so it's being

2   produced as fast as we can.  But this is under the

3   order of the Court by Judge Arias that we're doing

4   this.  And we're also applying it to an account that

5   was Frances Díaz's account, a witness in this case.

6   And I should also add, Your Honor, her name is in the

7   indictment stated publically so this is not something

8   that's not already public.

9       MS. SÁNCHEZ:  Your Honor, frankly, I would

10  love for the Court to review Judge Arias's order.

11  What Judge Arias ruled was for the government to

12  follow the law which they had failed to do from the

13  beginning of this case since they received those

14  search warrant materials and they did not put it

15  through a filter team initially, which is the way it

16  should have been done, when they knew that every

17  single person and the defendants in this case all

18  were either lawyers or very lawyered up.

19      So they knew that when they got especially

20  the phone, whether it was Frances Díaz who's a

21  lawyer, my client who has one hundred lawyers because

22  of all his businesses, Wanda Vázquez who is a lawyer,

23  okay, they knew the minute that they got those search

24  warrant data in 2020 that they should not have looked

25  at them, which they did.  And we just found more 302

Status Conference

1    FBI evidence that they did look at it when they

2    misrepresented that they hadn't looked at it.  But

3    we'll get through that and it's within our motion,

4    let me say that.

5            So what happened was when we found out that

6    there was no filter team in place, the way that it

7    should've been done from the minute they received

8    these search warrant returns, we filed our motion

9    with the judge, first, for two reasons:  Number one,

10   to get a filter team in place and, number two, for

11   recusal of the government and the agents who had

12   looked at material that was privileged when they

13   shouldn't have without using a filter team.

14           So Judge Arias, when you look at his order,

15   he told the government they needed to follow law that

16   they should have followed since the onset.  And that

17   is why, again, we still believe, number one, that the

18   material that hasn't been produced to date should be

19   excluded and, number two, there's still pending the

20   issue about the recusal of the government prosecution

21   team and the agents because we have found now in the

22   1.4 million documents that they just produced 302s of

23   the FBI that confirm our suspicion -- that they

24   looked at a bunch of the material that was privileged

25   before the filter team was in place.

Status Conference

1      MR. CROSSWELL:  Your Honor, this has been

2   litigated, I'll say that again, but we have in -- our

3   response to their initial motion on the filter team

4   we had stated the FBI did review the search warrant

5   account before the filter team was put into place,

6   that's how the indictment was built.  However, in

7   March of 2022, mostly using names of lawyers that we

8   learned represented the bank we ran the accounts

9   through filter terms.  We used, I think,

10  approximately 20 terms of persons that we knew had

11  represented the bank and then after the indictment

12  came down the defense challenged this.

13      Now, Mr. Herrera since that point has given

14  us about one hundred attorneys' names and that is why

15  this filter scope is bigger, and that's fine; but

16  there's no way to know a hundred different attorneys'

17  names prior to the indictment without knocking on

18  Mr. Herrera's or his counsel's door saying, "He's

19  under a grand jury investigation."  That's not an

20  option.

21      And, beyond this, we never seized bank

22  accounts -- I mean, excuse me, Bancrédito's

23  professional servers.  We never went in and seized

24  e-mails Bancrédito.com, and these were personal

25  e-mail accounts.  And so it's not to be expected that

Status Conference

1    there'd be a bunch of e-mails related to Bancrédito,

2    its president, or its owner and his attorneys on

3    Yahoo accounts.  I mean, we were told that this bank

4    was in legitimate operation and apparently they're

5    exchanging e-mails on their Yahoo accounts.  That

6    wasn't to be expected.  And so we did implement a

7    filter review, it wasn't done right from the start,

8    that's been clear, we stated that in our first

9    response.  And since that point because of that Judge

10   Arias ordered that the fraud's filter team, a

11   different component of DOJ, would run this filter.

12   And it's taken awhile but it's actually also been

13   very, very quick given the scope of the material.

14          THE COURT:  I'm reviewing Judge Arias's

15   order and it was entered on February 28th of 2023.

16   That's what I'm reviewing right now.

17          MS. SÁNCHEZ:  Your Honor, and just to be

18   clear, I mean, I sat in the Government's chair for a

19   long time as well before being a defense attorney.

20   When you get any kind of electronic data that you

21   know has attorneys' names in it and you know 20

22   attorneys, that's not -- you just don't use 20

23   attorneys, and that's not an excuse for not putting a

24   filter team in place; because at the end of the day

25   if you look at every single e-mail, if it has an

Status Conference

1    esquire, if it has a law firm, if it has a law firm

2    name, you know that that's a privileged document.

3    It's not as if we have to give them a hundred names.

4    It's easier if we give them a hundred names, but the

5    filter team has the capability of looking at every

6    single document and realizing which ones are

7    privileged or not, so this is not an excuse

8    whatsoever.  And they knew the number of attorneys

9    that Mr. Herrera had and the bank had.

10          MR. NADLER:  If I may just quickly.  Again,

11   no-fault to Mr. Crosswell but this assertion that

12   every text messages is one page just is not true.

13   And the example is the 83,000 page document that has

14   one Bates stamp on it.  That's a perfect example.

15   When you open that, that is John Blakeman's WhatsApp

16   messages with every single person, page after page

17   after page, in no order, unsearchable.  It just

18   goes -- it's unreviewable.  The government couldn't

19   review all this stuff, so they're literally giving us

20   everything.  So we have to go through page by page by

21   page to see who they're communicating with and if

22   there's any relevant document.

23          The hotdoc issue is a whole other issue; the

24   privilege issue I'm not going to get into.  For the

25   first time we heard that was a hotdoc folder that had

Status Conference

1  information that the government reviewed or the

2  agents reviewed prior to, I believe, the filing of

3  the indictment that the government believes.  And

4  it's the same point with InScope.  I'm not sure what

5  InScope means.  I'm assuming they're referring to the

6  search warrants and the terms of that, but there are

7  several individuals who we have all readily

8  identified are cooperators.  We believe InScope is

9  far smaller than what should be produced; it's a

10  relevance determination at this point.  And the

11  defense is solely making that determination.  The

12  government is giving us everything.

13          THE COURT:  But don't you want to make that

14  determination?  You don't want the government to make

15  decisions regarding relevance at this point.

16          MR. NADLER:  I don't.  But I don't want

17  500,000 pictures or voice notes that I have to go

18  through and listen that are between Wanda and her

19  husband that have nothing to do with anything.

20  There's a certain point where it is clear, and even

21  taking a broad definition of relevance, that have

22  nothing do with this case.  "I love you, honey.  I'll

23  be home for dinner."  You have to go through

24  thousands of hours of voice notes to determine if --

25  it's impossible.  I can't do that.  There should be

Status Conference

1   some basis on even the broad Rule 16 of relevance

2   that these documents should be turned over in a more

3   calculated, searchable, logical way.

4          And, again, I do want to make that

5   determination, but I want to make that determination

6   on a pot or pool of documents that actually, in the

7   broadest possible definition, relate to this case.

8   And I can't.

9          MR. CROSSWELL:  Judge, I just want to

10  briefly respond to one point that he made.  He is

11  right that there is this page that has these

12  80,000 pages of documents.  What I'm saying is that

13  when he gets the full phone in the next production

14  he'll have the UFED Reader and be able to go through

15  that search.

16          Second point, it is the case that a lot of

17  these "pages" of discovery, again, at this point it's

18  only about 500 gigabytes -- and there's going to be

19  more, so that's going to grow.  A lot of the pages

20  are single text messages which take a second to read.

21  But I guess the point is we are -- we have taken a

22  very expansive view of our discovery obligations.  We

23  have produced several files not only in this case but

24  two other cases.  And we're not going to hold

25  anything back.

Status Conference

1          Vázquez's counsel has asked us to produce

2    less, and we always feel like the safest way is to

3    produce everything so that Mr. Rossini's counsel and

4    Mr. Herrera's counsel, and Ms. Vázquez's counsel can

5    make the determination of what's important.  And a

6    lot of that is pictures or recipes or music or

7    movies.  Most of it is not relevant.  But we don't

8    have any other choice, we have to give it all over.

9          And at this point, again, it is about a half

10   a terabyte of information, which is not outside at

11   all of the scope of a general white-collar case.

12   It's just taken longer because of the unique history

13   of this filter review.

14          THE COURT:  Okay, so by March 1st you think

15   you're going to be done with this production?

16          MR. CROSSWELL:  Correct.

17          THE COURT:  And it will be put in the UFED

18   format?

19          MR. CROSSWELL:  Yes, for the phones, Your

20   Honor.  And, as counsel pointed out, they do have

21   some homework too.  They have to assert privilege.

22   They've asked for some extensions; we never fought

23   them on that.  But it kind of goes to show you when

24   they're just reviewing the stuff that the filter team

25   has pointed out is potentially privileged, it takes

Status Conference

1    time.  Well, it takes us time as well.

2         THE COURT:  All right.  So there is no issue

3    regarding the privilege log.  The government does not

4    oppose that petition?

5         MR. CROSSWELL:  Your Honor, we do not expect

6    to oppose it.  I mean, we would like to see what the

7    defense shows us.  But in particular with the case of

8    Mr. Herrera, because this is the one who it's going

9    to apply to most, he had a hundred filter terms, we

10   understand; but mostly it's going to relate to

11   banking issues that were several years before the

12   indictment.  We don't care to see those

13   communications, so we do not expect that once

14   Mr. Herrera, Mr. Rossini, and Ms. Vázquez assert

15   privilege we don't expect to fight them over that.

16        THE COURT:  You mean on the request for the

17   privileged log?

18        MR. CROSSWELL:  Oh, sorry, Your Honor.  Yes.

19   So they will get the privileged logs but basically

20   what we need -- like, for example, we need for

21   Mr. Rossini to return his privileged log before we

22   can turn it over to Ms. Vázquez.  So we don't oppose

23   Mr. Herrera's request for privileged logs, but they

24   need to come from the other defendants and the third

25   parties and at which point we will provide them.

Status Conference

1      THE COURT:  And how long do you think this

2   process will take?

3      MR. CROSSWELL:  Well, so at this point I

4   believe that Mr. Rossini has asked until late

5   February to turn over his privileged log.

6      THE COURT:  Okay.

7      MR. CROSSWELL:  Let me just go back to my

8   notes, Your Honor.  So Rossini's requested until

9   February 16th, I believe.  Mr. Herrera's requested

10  until February 23rd.  And I don't believe Governor

11  Vázquez has requested an extension yet.

12     THE COURT:  So that would be before the

13  March 1st?

14     MR. CROSSWELL:  Correct.  And by the

15  March 1st deadline, Your Honor, we mean turn over all

16  the non-privileged information that we have.  The

17  next step will be for them to produce their --

18     THE COURT:  All right.  Now, during our last

19  status conference the government mentioned --

20     MR. PLAZA-MARIOTA:  Your Honor, may I say

21  something briefly?

22     THE COURT:  Regarding this issue.  Yes, go

23  ahead.

24     MR. PLAZA-MARIOTA:  May I approach.

25     THE COURT:  Yes.

Status Conference

1          MR. PLAZA-MARIOTA:  Your Honor, I try to

2     foretell the future like Panasonic, *verdad*.  I know,

3     I know -- okay, I know that everybody will try their

4     best.  Fine, okay.  When March 1st comes we will

5     still be in the lake of evidence that we have

6     received and nothing will have happened because

7     frankly we can't.  Okay.  We will need a record.  We

8     will need the record.  I mean, we will need the

9     record because nobody knows if this case will

10    eventually end up in the First Circuit Court of

11    Appeals.  We need a record.

12          If trying everything that Mr. Crosswell is

13    saying we still cannot access the evidence, I will

14    insist on an evidentiary hearing with technical

15    experts that will create a record of what we are

16    facing because it is our obligation to defend our

17    client and if by any chance over there is some Brady

18    or whatever we didn't see it and then later on

19    somebody sees it, what they will say?  Ineffective

20    assistance of counsel.  Because we didn't see it.

21          So, fine.  We will try our best.  And I know

22    we have tried with counsel for the government to

23    reach agreements and I'm hopeful I'm hopeful, but,

24    but, if March comes and we're in --

25          THE COURT:  Okay, let's wait until March

Status Conference

1    comes.

2          MR. PLAZA-MARIOTA:  -- and we're in the

3    situation we will move the Court respectfully for

4    that.  Okay?

5          THE COURT:  Okay, let's not cross that

6    bridge just yet.

7          MR. NADLER:  May I say one thing.

8          THE COURT:  Let's wait for the production,

9    I'm going to give you the time to make the

10   production, work with the privileged log, and try to

11   work it out with the UFED.  If you still can't then

12   you can come back to court for any relief.

13         Go ahead.

14         MR. NADLER:  I don't want to get lost in the

15   forest.  We are talking about, in large part, the

16   downloads from the phones, but a significant portion

17   of this is the search warrant Icloud e-mails.  And

18   Production 11 contained significant information

19   documentation regarding these documents and stuff in

20   the cloud.  There's not metadata of who edited, who

21   created, who viewed in the way they produced it.  So

22   the UFED will hopefully make a voluminous production

23   more searchable, but it won't solve the problem on a

24   large significant portion of what was in 11 and even

25   some of the previous productions at this point.

Status Conference

1          THE COURT:  So what's the relief you seek?

2          MR. NADLER:  That they can produce the

3     originals, not just the load files.  The way that the

4     load files have been created it is removing metadata,

5     and when we get it you can't see who modified

6     sometimes.  You can't see who created it.  There's no

7     dates.  So when we go to look at a specific time

8     period we're missing thousands, if not millions, of

9     documents.

10          THE COURT:  But you were complaining of

11    being overwhelmed with document now you want more

12    documents?  I didn't follow this last argument.

13          MR. NADLER:  That's not what I'm saying,

14    Your Honor.  I'm saying I want relevant documents,

15    but if you're going to give me things and make me do

16    the search to determine what's relevant, I should

17    have the ability to do that.  I shouldn't have to

18    look through every single page if I'm looking for

19    documents between X date and X date or from that's

20    been created by my client, Mr. Herrera, or Ms. Díaz.

21    And I can't find those documents because the metadata

22    has been removed.  Yes, there will be some cure on

23    the UFED, but that doesn't cure everything.

24          THE COURT:  All right.  Let's wait until the

25    production finishes and what happens with the new

Status Conference

1    productions using the UFED and we'll deal with that

2    when we have to, but for now I'm going to remain

3    hopeful that it will be produced and that it will be

4    manageable and that it will be done within this time

5    period of March 1st.

6            Regarding the classified information, during

7    the last status conference the government stated that

8    my chambers would be contacted and that these

9    documents would be sent over and that I just needed

10   to wait and that that was the proper and formal

11   process or procedure.  I haven't received this.  So

12   this should still be sitting at Judge Arias' office.

13           MR. CANNON:  We were told that next week

14   that the process was already -- I'll find out

15   immediately.

16           THE COURT:  It hasn't happened.

17           MR. CANNON:  We had been told that they had

18   been in contact with somebody from your chambers.

19   I'll follow-up today.

20           THE COURT:  No.  Everyone in my chambers and

21   in my staff is aware of this so they know that it

22   should be coming but it's been awhile, so if you

23   could please follow-up.

24           MR. CANNON:  Absolutely.  We were told that

25   it was on the way, Your Honor.

Status Conference

1    THE COURT:  All right.  Now I want to hear

2    from counsels for Herrera regarding their filing at

3    438 and the disclosure of documents that they allege

4    are in possession of the government and that have not

5    been produced.

6    MS. TORRES-PABÓN:  Yes, Your Honor, that's

7    the motion to compel and to exclude.

8    THE COURT:  Yes, I'm referring to that same

9    motion, but I'm now -- I would like to hear you on

10   these other documents that you seek and you allege

11   that these documents are in the possession of the

12   government and have not been produced.

13   MS. TORRES-PABÓN:  If I may, Judge, there's

14   a series of category of documents.  One of the major

15   disputes among the parties is whether they should

16   be -- the government should be obligated to go to the

17   regulatory agencies which we understand were part of

18   the investigation.  And we've provided the Court the

19   reasons why we think the information is material.

20   The government is essentially stated all the

21   regulatory agencies they were not part of the

22   investigation, we don't have an obligation.

23   THE COURT:  You state in your motion that

24   they are part of the prosecution team.  Is that your

25   theory?

Status Conference

1          MS. TORRES-PABÓN:  That's our theory based

2     on the case law, Your Honor.  I know that Court

3     doesn't want me to state here the names, but I

4     believe they had 10 or 11 informants from they OCIF

5     office only working on this case.  They had the

6     commissioner and the prior -- the current

7     commissioner and prior commissioner working on what

8     we call reaching out to the bank.  And, as we stated

9     there, it's an issue of materiality, Your Honor, and

10    materiality is not for the government to determine.

11    It's not for them to determine how we're going to use

12    it and how relevant it is.  That's for the defense

13    and how that fits into the defense's theory.  And it

14    is our theory that in fact the agencies were used

15    essentially --

16          THE COURT:  Yes, I understand.

17          MS. TORRES-PABÓN:  You understand our

18    theory.  So we understand --

19          THE COURT:  I'm talking about production

20    now.  I understand your theory.  But the government

21    has represented that it has produced OCIF records

22    related to 2016, 2017, 2019 audit, examinations, all

23    related to banking.  So --

24          MS. TORRES-PABÓN:  Well, we're looking --

25    I'm sorry.

Status Conference

1    MR. CANNON:  All we've received from OCIF

2    we've produced.  We just don't -- our objection is

3    putting the government in a position to go over

4    through OCIF's files and start to look through stuff

5    for the defense.  They are not part of the

6    prosecution and we don't have that obligation.

7    THE COURT:  But I want it to be clear that

8    what you have received you have produced.

9    MR. CANNON:  Yes, Your Honor.

10    THE COURT:  Okay.

11    MS. TORRES-PABÓN:  Your Honor, if I may

12    address one point.  There's one issue which is the

13    communications of the government with OCIF and

14    FinCen.  That's in their possession.  They don't have

15    to go to --

16    THE COURT:  Well, hasn't the government

17    produced every 302?

18    MS. TORRES-PABÓN:  No.  They haven't

19    produced communications.  In one of the -- I think

20    it's the August letter they say they're going to talk

21    to the FBI and see if they have anything --

22    MR. CANNON:  Your Honor, we're looking for

23    e-mails between OCIF and FBI personnel so that we can

24    produce that as well, if there was any.  There may --

25    we've talked to the agents who were running that case

Status Conference

1  back then and there may be a few, but we're going to

2  get it and produce it.

3          THE COURT:  All right.  Okay, regarding

4  confidential human sources case files, the government

5  has made a representation that it has produced

6  everything except stuff that has to do with

7  administrative stuff.

8          MR. CROSSWELL:  Yes, Your Honor.  So if it

9  involves a witness being paid or a witness making a

10  statement or their quarterly reports which sort of

11  reports in their progress, whether it be open or

12  closed, any substantive stuff has already been

13  produced to the defendants.  There is administrative

14  paperwork that is just not relevant, we didn't

15  produce that; but everything that would potentially

16  be relevant to any witness's credibility or any

17  Rule 16 has been produced.

18          THE COURT:  Any *Giglio*?

19          MR. CROSSWELL:  Yeah, I mean, Your Honor, if

20  a witness was, for example, given any benefits they

21  would have received that already.  Yes, that's been

22  produced.

23          THE COURT:  That's the classic *Giglio*.

24          MR. CROSSWELL:  Yes.

25          THE COURT:  That's been produced.

Status Conference

1          MR. CROSSWELL:  Correct.

2          THE COURT:  So what's considered

3     administrative?

4          MR. CROSSWELL:  Uhm, for example, like when

5     a witness is signed up, Your Honor, it will give

6     their date of birth, that sort of information,

7     biographical information, their job.  I mean, I'm

8     trying to recall because it's been a few months since

9     I've gone through it, but just stuff that really

10    doesn't have any relevance and doesn't speak to their

11    credibility.

12         MS. TORRES-PABÓN:  Your Honor, if I may.

13    Again, it's not up to the government to determine

14    relevancy.  That's why I -- what we're asking is for

15    the Court to look at it.

16         THE COURT:  All right.

17         MS. TORRES-PABÓN:  That's all we're asking.

18    I don't see, you know, why -- the government's

19    response is, Oh, that's a waste of time.  But that's

20    not up to them.

21         THE COURT:  Can you produce it for in camera

22    review?

23         MR. CROSSWELL:  Sure, Your Honor.

24         THE COURT:  How long do you need?

25         MR. CROSSWELL:  I want to talk to the FBI

Status Conference

1    just because I'm afraid of -- but as fast as

2    possible, Your Honor.  We will figure out a way to do

3    that.  It's a little bit tricky to get kind of a

4    database but we'll figure out a way.

5                THE COURT:  Okay.

6                MR. CROSSWELL:  Would you like a status

7    update on that?

8                THE COURT:  30 days for the in camera review

9    of that.

10               MR. CROSSWELL:  Sure.

11               MR. CANNON:  Your Honor, what I would ask,

12   if Your Honor is willing to entertain this, we can

13   have an agent come over to your chambers and show you

14   what we're talking about as administrative documents.

15   I think the practice isn't to have these really on

16   any docket of any kind given the --

17               THE COURT:  I don't have a problem with

18   that.

19               MR. CANNON:  All right.  Thank you, Your

20   Honor.

21               THE COURT:  So have the agent coordinate

22   with my office and I'll review it.

23               MR. CANNON:  Will do, Your Honor.  Thank

24   you.

25               THE COURT:  Okay.

Status Conference

1    MS. TORRES-PABÓN:  Your Honor, do you want

2    us to continue through the motion, Your Honor, or no?

3    THE COURT:  No.  No.  That's okay.

4    MS. TORRES-PABÓN:  Okay.

5    THE COURT:  Regarding the hard drive, the

6    joinder of hard drives, I believe you were going to

7    meet and confer regarding that.

8    MR. CROSSWELL:  So that's a suggestion, Your

9    Honor.  We have received a privileged log from OCIF.

10   It has items that they wish to withhold, and so we

11   would like to provide that to Mr. Herrera.  Maybe

12   there's some documents he would agree he doesn't need

13   to see, and then we can report back to the Court.

14       I'm sure there will be some dispute.  And,

15   Your Honor, the issue for us is really we're kind of

16   between a rock and a hard place because, one, we

17   would be happy to produce all this, but also it does

18   appear the e-mails that are OCIF's privileged

19   communications -- and they happen to be in litigation

20   right now, I believe, with Bancrédito.  So, you know,

21   we're trying to meet the discovery obligations but

22   also protect OCIF's potentially privileged

23   communications.

24       THE COURT:  Yes, I'm aware of that

25   situation.  All right.  So during our last status

Status Conference

1    conference I stated that I had blocked two dates,

2    February 27th and March 11th, to start this trial.  I

3    think that these issues with discovery, the amount of

4    discovery being produced and to be produced, the fact

5    that I still need to rule on a number of dispositive

6    motions makes these dates not realistic.  Actually

7    we're talking about March 31st to finish the

8    production on the part of the government.

9            So what I propose we do is that you meet and

10   you propose to the Court two dates in which you

11   believe that you are all available and will be ready

12   to try this case.  I will choose one of the two dates

13   that you propose and it should be before October of

14   this year.  And then I will set deadlines, a cutoff

15   of discovery for the government, a date for

16   designation of evidence, a pretrial conference, and

17   then I will set the trial for one of the two dates

18   that you propose.  I believe that's the best course

19   of action at this time.  To try to continue pushing

20   for February or March is not realistic.  I could be

21   proposing a date in May, but since this discovery

22   seems to be so voluminous and I have yet to rule on

23   these motions, I believe that if you propose the

24   dates it will be better for everyone and then I can

25   set the additional deadlines, all pretrial deadlines.

Status Conference

1          All right.  Any other matter, any other

2     issue that you want to bring to my attention?

3          MR. CANNON:  Your Honor, can I approach with

4     Mr. Crosswell just *ex parte* about the CIPA issue?  We

5     could do it off the record.  I just want to give you

6     a name so that we can get this resolved today.  I

7     actually got an update from them already.

8          THE COURT:  Okay.

9          (Ex parte discussions begin.)

10    ████████████████████████████████████████████

11    ████████████████████████████████████████████

12    ████████████████████████████████████████████

13    ████████████████████████████████████████████

14    ████████████████████████████████████████████

15    ████████████████████████████████████████████

16    ████████████████████████████████████████████

17    ████████████████████████████████

18    ████████████████████████████████████████

19    ████████████

20    ████████████████████████

21          (Ex parte discussions end.)

22          THE COURT:  Okay?  Any other matter?

23          MS. SÁNCHEZ:  Yes, Your Honor.  Your Honor,

24    the only thing is even just briefly, and I've talked

25    to my co-counsel, I mean I -- we do not believe that

Status Conference

1    October is in any way realistic to try this case.  I

2    mean, the volume is huge.  Even if they give

3    everything to us by March 31st and then we still have

4    to do the privileged logs and we still have to file

5    all the motions regarding that.  I mean,

6    realistically I don't see how this is possible before

7    sometime early '25, first quarter of '25.

8              MR. NADLER:  I agree with that, Your Honor.

9    And that's not -- that's again with the targeted

10   searches and essentially a wing and prayer not

11   reviewing the majority of what's produced to make a

12   determination.

13             THE COURT:  Mr. Plaza?

14             MR. PLAZA-MARIOTA:  I remain hopeful.  I

15   remain hopeful.  I remain -- can I approach very

16   briefly.  We should try.  We should try to have a

17   trial, okay.  If I may say something very briefly as

18   to reciprocal discovery, the government already

19   requested reciprocal discovery.  We are going to be

20   filing with the Court a motion requesting the

21   issuance of subpoenas in order to finish our

22   investigation and obtaining the supporting documents

23   for our investigation.  And most of that production

24   will be then turned over to the government as

25   reciprocal discovery.

Status Conference

1          So we are moving ahead.  Right now we are
2    going to be dealing -- well on behalf of Wanda
3    Vázquez we are going to be dealing with the filter
4    team request, but we are just not touching right now
5    the 10 million documents that we received and we will
6    continue fast-forward preparing for trial, just in
7    case.
8          THE COURT:  All right.  So provide me these
9    two dates and let's extend instead of October,
10   December, but I think this case should be tried in
11   2024, absent extraordinary circumstance.  So provide
12   me two dates before December of this year and if we
13   encounter extraordinary circumstances pertaining to
14   discovery and so forth, I'll reconsider.
15         MS. SÁNCHEZ:  Your Honor, I would also -- we
16   have several *ex parte* issues pending with the Court
17   that deal with requests, different subpoenas, for
18   documents that we have requested that are outstanding
19   with the Court.  So --
20         THE COURT:  Yes, I'm aware.
21         MS. SÁNCHEZ:  Great.  Thank you.
22         THE COURT:  I'm aware of everything that is
23   pending in the docket.  I've just had a very busy
24   calendar, but I am aware and I will be ruling
25   forthwith.

Status Conference

1          MS. SÁNCHEZ:  And then the other one is when
2     you get to our motion to dismiss based on the
3     government misconduct, as you know in that motion we
4     requested an evidentiary hearing on all those issues.
5     So we'd like that scheduled when the Court has an
6     opportunity to review.
7          THE COURT:  All right.  I will schedule it,
8     if I grant your request for the hearing.  If not,
9     I'll rule on the papers.  And I have to say that it's
10    fully briefed.  I believe I have everything I need,
11    all the information and all the arguments and all the
12    citations before me.  But if I feel that a hearing is
13    warranted and will assist the Court in making this
14    decision, I will for sure schedule one.
15         MS. SÁNCHEZ:  Thank you.  And we will
16    probably be supplementing that motion based on just
17    some of the new information that we received in this
18    last production.
19         THE COURT:  All right.  You may do so.  How
20    long do you need to make this supplemental filing?
21         MS. SÁNCHEZ:  Well, I'm hoping that -- it
22    depends on how quickly they can give us the UFED and
23    metadata so that we could search it and get
24    everything that -- you know, look at everything there
25    so we could put it all together in one supplemental.

Status Conference

1              THE COURT:  So you're asking for time after

2      March 31st to supplement?

3              MS. SÁNCHEZ:  Well, I mean -- or I can do

4      the supplemental on a rolling basis when I find

5      something I can file.  I mean...

6              THE COURT:  Well, then I will never rule if

7      you keep filing.

8              MS. SÁNCHEZ:  No, but I don't know how to --

9      it's difficult because I don't know what they're

10     going to -- what I'm going to find that -- so that's

11     the issue.

12             MR. NADLER:  Your Honor, we are waiting to

13     file a supplemental motion until discovery is

14     complete so we know the full scope of at least what's

15     out there from what we can review and determine.

16             THE COURT:  You're asking me to withhold

17     ruling on the dispositive motions until you have

18     additional time to supplement or, in the case of

19     Mr. Rossini, to file a dispositive motion?

20             MR. NADLER:  That's right.  There are no

21     current deadlines on dispositive motions or discovery

22     so --

23             THE COURT:  You're correct.

24             MR. NADLER:  -- at this point we're waiting

25     to see what the production is to file any dispositive

Status Conference

1    motions, motions in limine.

2            THE COURT:  All right.

3            MS. SÁNCHEZ:  Unless the Court is inclined

4    to dismiss the case based on the motions filed to

5    date.

6            THE COURT:  Oh, that's some thought.  Not

7    ready to do that.

8            Okay, so I will set some deadlines for

9    dispositive motions.  When I enter the minutes of

10   today's status conference I will set some deadlines;

11   however, again if things change, circumstance change,

12   you get additional information, then I could revisit

13   that; but at some point I have to do a cutoff for

14   supplemental dispositive motions or additional

15   dispositive motions otherwise the case will not move

16   along.  All right.  Thank you everyone.

17           MR. PLAZA-MARIOTA:  Permission to withdraw.

18           THE COURT:  Granted.

19           THE COURTROOM DEPUTY:  All rise.

20           (The Court exits the room.)

21           (Status conference concluded at 4:41 p.m.)

22                         ---

23

24

25

EVILYS E. CARRIÓN-ESQUILÍN, RPR
OFFICIAL COURT REPORTER FOR THE U.S. DISTRICT COURT OF PUERTO RICO
(787) 772-3377

```
1   UNITED STATES DISTRICT COURT    )

2                OF                  )ss.

3        PUERTO RICO                 )

4

5

6

7                       CERTIFICATE

8

9

10          I, EVILYS E. CARRIÓN-ESQUILÍN, hereby

11   certify that the proceedings and evidence are

12   contained fully and accurately, to the best of my

13   ability, in the notes recorded stenographically by

14   me, at the status conference in the above matter; and

15   that the foregoing is a true and accurate transcript

16   of the same.

17

18                       /s/ Evilys E. Carrión-Esquilín

19                       EVILYS E. CARRIÓN-ESQUILÍN, RPR
                         Official Court Reporter
20                       United States District Court
                         Federal Building, Room 200
21                       San Juan, Puerto Rico 00918
                         787-772-3377
22

23

24

25
```