IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> WANDA VÁZQUEZ-GARCED [1], JULIO M. HERRERA-VELUTINI [2], AND MARK T. ROSSINI [3], <br><br> Defendants. | CRIM. NO. 22-342 (SCC) |

**OPINION AND ORDER**

Mr. Julio M. Herrera-Velutini has moved the Court for a change of venue due to excessive pretrial publicity, or, in the alternative, for this case to be reassigned to a visiting judge. *See* Docket No. 342. At the Court's request, *see* Docket No. 349, his codefendants stated their positions regarding the relief he seeks. Mr. Mark T. Rossini, for his part, fell short of formally joining the motion for change of venue, but he took the position that he does not oppose Mr. Herrera-Velutini's request since, he too, agrees that it would be impossible for this Court to empanel an unbiased jury considering the media attention surrounding this case. *See* Docket No. 354. Mrs. Wanda Vázquez-Garced, for her part, stated that she wants to

be tried in this District. *See* Docket No. 360. She did, however, reserve the right to move for a change of venue if the *voir dire* process reveals that such relief is warranted. *Id.* The Government opposed both the primary and alternative relief sought by Mr. Herrera-Velutini. *See* Docket No. 359. And Mr. Herrera-Velutini filed a reply, *see* Docket No. 374 and later supplemented his request, *see* Docket No. 426.

Having carefully reviewed the parties' briefs, as well as the accompanying documents and recordings, the Court hereby **DENIES** the relief sought by Mr. Herrera-Velutini.

## I.   MR. HERRERA-VELUTINI'S REQUEST FOR A CHANGE OF VENUE

"Notwithstanding the constitutional command that trials take place where crimes are committed, the defendant's rights to an impartial jury and a fair trial may require that in extreme cases the trial be moved to a venue other than where the crime was committed." *In re Tsarnaev*, 780 F.3d 14, 18 (1st Cir. 2015). Mr. Herrera-Velutini believes that such is the case here. He reasons that a change of venue is warranted because the pretrial publicity that this case has garnered (and will continue to garner, in his opinion) is so pervasive and sensational, that his constitutional right to a fair trial will not

be guaranteed if this case is tried in this District. He invokes Federal Rule of Criminal Procedure 21 in his quest to secure a change of venue. Specifically, his request is grounded in subsections (a) and (b) of that rule. Accordingly, each subsection will be considered in turn while bearing in mind that how the Court rules on a motion for change of venue is committed to its sound discretion. *See United States v. Tsarnaev*, 96 F.4th 441, 447 (1st Cir. 2024).

## A.  Change of Venue Pursuant to Rule 21(a)

If the Court finds "that so great a prejudice against" Mr. Herrera-Velutini exists in this District such that he "cannot obtain a fair and impartial trial," Rule 21(a) would bless a venue transfer. Fed. R. Crim. P. 21(a). To determine if prejudice that forecloses the opportunity for a fair trial exists such that a venue transfer is necessary, the First Circuit directs the inquiring court to  consider "1) whether the degree of inflammatory publicity had so saturated the community such as to make it virtually impossible to obtain an impartial jury or 2) if prejudice cannot be presumed, whether nonetheless the empaneled jury was actually prejudiced against the defendant." *United States v. Misla-Aldarondo*, 478 F.3d 52, 58

(1st Cir. 2007) (cleaned up). The first part of the inquiry is generally referred to as the "presumed prejudice" prong, whereas the second part is referred to as the "actual prejudice" prong.

In this case, because Mr. Herrera-Velutini filed his motion at the pretrial stage, jury selection is months away and his discussion has exclusively centered on presumed prejudice instead of actual prejudice, this Court will solely focus on if Mr. Herrera-Velutini has shown that prejudice should be presumed here.[1] But what exactly must the Court consider when conducting that evaluation? Well, "the Supreme Court identifies four factors relevant to presuming prejudice: the size and characteristics of the community, the

---

[1] The First Circuit has explained that "[a]ctual prejudice hinges on 'whether the jurors seated at trial demonstrated actual partiality that they were incapable of setting aside." *United States v. Quiles-Olivo*, 684 F.3d 177, 183 (1st Cir. 2012) (quoting *United States v. Angiulo*, 897 F.2d 1169, 1182 (1st Cir. 1990)). This further bolsters the Court's decision that it need not conduct an actual prejudice analysis here since the jury has yet to be empaneled and the trial is months away. *See also United States v. Pérez-Otero*, Civ. No. 21-474 (ADC), 2023 WL 2401932, at *3 n. 6 (D.P.R. Mar. 8, 2023) (solely running a presumed prejudice analysis and refusing to conduct an actual prejudice analysis "because the case . . . is still in a pretrial stage and no jurors have been selected, making [an actual prejudice] analysis an impossibility.").

nature of the publicity, the time between the media attention and the trial, and whether the jury's decision indicated bias."[2] *See United States v. Casellas-Toro*, 807 F.3d 380, 386 (1st Cir. 2015) (citing *Skilling v. United States*, 561 U.S. 358, 379, 382-84 (2010)). In his motion, Mr. Herrera-Velutini relied on the first three *Skilling* factors. But in its response, the Government did not address the *Skilling* factors head on. Rather, it stressed that prejudice could not be presumed based on the facts before this Court and given the current procedural juncture of this case. Here, the Court will rely on the first three *Skilling* factors to guide its analysis. It will not, however, consider the fourth factor because doing so would be a fruitless endeavor at this time.

      As far as the first factor is concerned, besides relying on First Circuit case law noting that Puerto Rico is an insular community that is susceptible to the media, *see* Docket No. 342, pg. 9, Mr. Herrera-Velutini does not actually provide any specific characteristics about the Puerto Rican community. The cases cited by Mr. Herrera-Velutini remain good law. But

---

[2] Throughout this Opinion and Order, the Court refers to these factors as the *Skilling* factors.

a citation to those cases without any further information tailored to his situation, does not assist the Court in its inquiry. For example, Mr. Herrera-Velutini could have used this opportunity to present evidence or articulate a comprehensive argument about how the Puerto Rican community consumes media tackling legal and political matters. After all, the volume of the media being produced does not necessarily equate to consumption. And while the Court acknowledges that one of his submissions contains samples of the comments made by social media users regarding this case, *see* Docket Nos. 342-5 – 342-6,[3] the bulk of those posts reflect the information that was being shared on social media over a year ago. More fundamentally, at this stage of the ballgame, there is no way for the Court to know if the individuals that posted and shared those comments and stories will comprise the potential jury pool.

Admittedly, in his motion, Mr. Herrera-Velutini repeatedly refers to an alleged text message exchange between himself and Mr. Rossini during which he is quoted

---

[3] English translations can be found at Docket Nos. 353-4 and 353-5.

as making a comment regarding Puerto Ricans. The comment was included in the Indictment and may be construed as being racially charged. Therefore, he argues that prejudice can be presumed because that comment was widely reported on by the media. And since the comment singled out Puerto Ricans, he reasons it will be difficult to find a jury that will not feel negatively towards him.

Indeed, the comment targeted Puerto Ricans. But Mr. Herrera-Velutini has not provided, for example, any polling data reflecting if the relevant community has heard about the comments or how they felt about the comments after they heard them and if that would preclude them from performing their duties as jurors. *See, e.g, United States v. Kourí-Pérez*, 985 F.Supp.25, 27 (D.P.R. 1997) (stating that "Defendants may use public opinion polls to demonstrate the need for a change of venue due to the potentially nefarious effects of pretrial publicity."). So, as things stand, Mr. Herrera-Velutini has not shown how the size and the characteristics of the community at issue here would indicate that prejudice should be presumed at this juncture.

The second factor concerns the nature of the publicity. The First Circuit has recognized that the "presumption of prejudice is reserved for those extreme cases where publicity is 'both extensive and sensational in nature.'" *See Misla-Aldarondo*, 478 F.3d at 58 (quoting *United States v. Angiulo*, 897 F.2d 1169, 1181 (1st Cir. 1990)). And that is precisely the type of publicity that Mr. Herrera-Velutini claims he has experienced thus far.[4] To support that proposition, he has submitted several news articles and radio show transcripts (totaling a little over 1,200 pages) for the Court to review. *See*

---

[4] In support of his request, Mr. Herrera-Velutini also discussed the pretrial publicity that potential witnesses in this case have received. Specifically, he highlighted media coverage of one potential witness. Nevertheless, a critical procedural development took place after Mr. Herrera-Velutini filed his motion for change of venue, which undercuts his arguments regarding that potential witness. Mrs. Vázquez-Garced and Mr. Rossini moved to sever. *See* Docket Nos. 368 and 369. The Court granted that request in part and severed Counts 1, 2, 3 and 4 from Counts 5, 6 and 7. *See* Docket No. 427. Counts 5, 6 and 7 charge Mr. Herrera-Velutini alone with conduct related to a distinct conspiracy. The potential witness that Mr. Herrera-Velutini discussed would tie into the allegations concerning Counts 5, 6 and 7. But Mr. Herrera-Velutini's trial for Counts 5, 6 and 7 will not be scheduled until after his trial for Counts 1, 2, 3 and 4 concludes. Accordingly, the Court will not delve into the merits of a change of venue request premised on the media attention surrounding counts not scheduled for trial. Mr. Herrera-Velutini may raise arguments regarding the impact of pretrial publicity on his right to a fair trial for Counts 5, 6 and 7 when he stands trial for those charges.

Docket Nos. 342-1 – 342-8, 374-1 – 374-2 and 426-1.[5]

Mr. Herrera-Velutini's submissions appear to confirm that the publicity in this case has been extensive. However, most of the articles that were submitted for the Court's review are essentially duplicates. While many news outlets may have picked up on the story, they are, for the most part, reporting the same thing without bringing anything new to light. So naturally, this begs the following question: what exactly is the media reporting on that has made Mr. Herrera-Velutini move for the relief he seeks? After all, "[m]erely a high volume of media coverage is not sufficient to presume prejudice, if that coverage is factual, as opposed to inflammatory." *See Misla-Aldarondo*, 478 F.3d at 58.

To answer the question posed above, the Court has reviewed Mr. Herrera-Velutini's submissions. Based on that review, the Court understands that even assuming that the publicity has been extensive, it cannot be said that it has been sensational in nature. Most of the articles memorialize what has transpired during Court proceedings or in public case

---

[5] English translations can be found at Docket Nos. 353-1 – 353-6, 413-1 – 413-5 and 428-1.

filings. Others are a bit more substantive since they are investigative pieces, but albeit the catchy headlines that accompany some of the articles or the fact that some articles underscore certain details over others, the submissions do not rise to the level necessary to clear the hurdle that would put them in the sensationalist category.

The Court's review of the submissions confirms that some articles and radio shows have "not phrased" their reporting about Mr. Herrera-Velutini "in the most genteel or flattering manner[.]" *See Angiulo*, 897 F.2d at 1181. As to this point, Mr. Herrera-Velutini noted that a handful of those articles and comments portray his past in a negative light. But that line of reporting (or commentary) has not been pervasive. And "[m]ere knowledge or awareness of a defendant's past, however, is not sufficient to presume prejudice." *See id.* at 1182. More is necessary because the Court must "distinguish between mere familiarity with [Mr. Herrera-Velutini] or his past and an actual predisposition against him [.]" *Murphy v. Fla.*, 421 U.S. 794, 800 n.4 (1975). Here, the articles and radio show commentary submitted to the Court regarding Mr. Herrera-Velutini do not reveal "an actual predisposition

against him," *see id.*, that would in turn point towards the existence of presumed prejudice.

In support of his request, Mr. Herrera-Velutini also emphasized the reporting about the comment that may be categorized as racially charged (and previously discussed in this Opinion and Order). But the reporting of that comment was factual in nature since it was taken directly from the Indictment. And while the articles submitted by Mr. Herrera-Velutini show that the media heavily spotlighted the comment, those articles date back to almost two years ago when the Indictment issued. Based on the submissions, it appears that no further articles regarding the comment have been published since then. So the lack of continued reporting about the comment coupled with the factual nature of its reporting, belies Mr. Herrera-Velutini's argument that prejudice that would make it impossible for him to face a fair trial in this District should be presumed due to that comment.

The third factor drives at the time elapsed between the time of the publicity and the trial itself. Here, when the Court considers that the trial date is set for January 21, 2025 (after the Puerto Rico general elections) vis-à-vis the submissions,

the Court does not find that this factor tilts the balance in favor of Mr. Herrera-Velutini's request.[6]

In *United States v. Pérez-Otero*, Civ. No. 21-474 (ADC), 2023 WL 2401932 (D.P.R. Mar. 8, 2023) a sister court rendered a thorough analysis of the applicable case law concerning pretrial publicity.[7] Having evaluated the cases cited therein and bearing in mind the analysis carried out in this Opinion and Order, all things considered, this Court does not find that, based on the facts before it, prejudice can be presumed at this stage. So, in the end, the Court concludes that a comprehensive *voir dire* process will provide the necessary safeguards to protect Mr. Herrera-Velutini's constitutional right to a fair trial. The Court guarantees that the *voir dire*

---

[6] When Mr. Herrera-Velutini filed his change of venue motion, the trial was going to be held on either February 20, 2024 or March 11, 2024. *See* Docket No. 329. So, in his motion Mr. Herrera-Velutini argued that the proximity between the trial date and the Puerto Rico primary elections (which will be held on June 2, 2024) in addition to the reporting leading up to that political event, would support a presumed prejudice finding. Given the new trial date, the Court finds that this argument is no longer relevant to the Court's current analysis.

[7] The *Pérez-Otero* court did not have before it a motion for change of venue, but the case law cited regarding the effects of pretrial publicity on an accused's right to a fair trial applies to this case.

process will be geared towards "ensuring that jurors have 'no bias or prejudice that would prevent them from returning a verdict according to the law and evidence.'" *United States v. Tsarnaev*, 595 U.S. 302, 312 (2022) (quoting *Connors v. United States*, 158 U.S. 408, 413 (1895)). Having said that, let it be clear that today's ruling does not mean that Mr. Herrera-Velutini (or any of the other defendants, for that matter) is foreclosed from raising this matter once again should he identify additional evidence or information that he deems would satisfy either of the prejudice prongs or if, for example, the *voir dire* process proves unsuccessful.

## B.  Change of Venue Pursuant to Rule 21(b)

Mr. Herrera-Velutini also claims that Rule 21(b) would sanction a change of venue here because it would be in the interest of justice. This is so, he contends, because of the extensive press coverage this case has received which will in turn make it impossible for him to receive a fair trial. The Court, however, finds that Mr. Herrera-Velutini's request for a change of venue pursuant to Rule 21(b) fails on at least two fronts.

First, Mr. Herrera-Velutini put his argument regarding a transfer pursuant to Rule 21(b) exclusively in the interest of justice bucket. But Rule 21(b) states that a transfer under that rule will happen "for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Fed. R. Crim. P. 21(b). Therefore, he was supposed to satisfy both the convenience **and** the interest of justice requirements that Rule 21(b) speaks of. *See United States v. Walker*, 665 F.3d 212, 224 (1st Cir. 2011) (explaining that "Rule 21(b) links the two requirements—convenience and the interest of justice—and when a rule lists two requirements in the conjunctive, both must be satisfied."). Mr. Herrera-Velutini's opening motion solely focused on the interest of justice requirement portion of Rule 21(b). And while it is true that in his reply, he attempted to make a convenience showing by arguing that most of the defendants, their attorneys and potential witnesses are located outside of this District, *see* Docket No. 374, pg. 10, that bare bones argument alone does not pass muster.

Indeed, Mr. Herrera-Velutini and Mr. Rossini do not reside in this District. But if their multiple requests (all of

which have been granted) to travel all over the world while
on bond are any indication, the defendants will not be
inconvenienced by having to travel to this District to face trial.
By the same token, most of the attorneys representing Mr.
Rossini and Mr. Herrera-Velutini are based out of Miami, but
a flight from Miami to this District is not a long flight by any
means. And as far as the potential witnesses are concerned,
no specific information regarding their location has been
provided by Mr. Herrera-Velutini. In any event, should some
witnesses have to travel from the continental United States to
this District, it would not be an uncommon occurrence. So, all
things considered, the argument that most of the defense,
their team and potential witnesses are located outside of this
District does not support a venue transfer under Rule 21(b)'s
convenience prong because Mr. Herrera-Velutini failed to
show exactly how they would be inconvenienced by having
to travel to this District for trial.

Second, Mr. Herrera-Velutini's interest of justice
argument is just a repackaging of his pretrial publicity
argument. Notwithstanding the fact that the analysis
pursuant to Rule 21(a) is different than the Rule 21(b) analysis,

*see United States v. Quiles-Olivo*, 684 F.3d 177, 181-82 (1st Cir. 2012) (so recognizing), Mr. Herrera-Velutini is trying to fit the same argument that he used to support his Rule 21(a) argument under Rule 21(b)'s interest of justice provision. But even considering Mr. Herrera-Velutini's pretrial publicity argument under Rule 21(b)'s interest of justice provision, after reviewing the evidence accompanying the request (the newspaper clippings and radio show audios), the Court does not find that a change of venue under that provision is necessary. As previously explained, the Court will conduct a thorough *voir dire* process. That should quell, for now, concerns about juror bias based on purported adverse pretrial publicity.

## II.  MR. HERRERA-VELUTINI'S REQUEST FOR A VISITING JUDGE

Having found that a change of venue is not warranted under either Rule 21(a) or Rule 21(b), the Court considers Mr. Herrera-Velutini's alternate request for relief: the appointment of a visiting judge to preside over this case. This request is grounded in Mr. Herrera-Velutini's understanding that if a visiting judge is appointed, this case will not experience further delays. He supports this argument by

highlighting that, thus far, three judges have recused themselves. So, he reasons, that the answer to avoiding delays lies in the appointment of a visiting judge. The Government, for its part, says that this is a cloaked request for the presiding judge to recuse herself. But, it added, that even if that were the case, the request is meritless because Mr. Herrera-Velutini failed to show why a recusal is necessary. In his reply, Mr. Herrera-Velutini did not address this alternative request and therefore did not engage with the Government's reading of it.

Visiting judges have been tapped to preside over cases in this District. As Mr. Herrera-Velutini points out, this District appointed a visiting judge when the then sitting Governor of Puerto Rico was indicted. For purposes of this analysis, the timing of that appointment is important. That appointment was made only four days after the superseding indictment charging the then sitting Governor of Puerto Rico issued. And the judges who were then sitting in this District unanimously agreed to appoint a visiting judge. *See* Docket No. 342-9. In this case, however, the judges currently sitting in this District did not take such a measure.

The record confirms that three judges in this District have recused themselves. But again, timing plays a critical role here. The first two judges that recused themselves never substantively interacted with this case and while the recusals took place, business remained as usual since, as is customary in criminal proceedings, a Magistrate Judge continued to preside over the initial stages of the case.

The third judge to recuse himself did so as soon as he determined that a situation that activated the recusal statute had materialized. *See* Docket No. 305. The same day that the recusal order was entered, the case was assigned to the undersigned. *See* Docket Nos. 306-307. And almost immediately thereafter, Mrs. Vázquez-Garced moved for reconsideration of the recusal order. *See* Docket No. 308. She argued, *inter alia*, that the reassignment of this case to another judge would delay the proceedings. *Id.* Mr. Herrera-Velutini reportedly supported the request for reconsideration. *Id.* However, this Court denied the request and made it clear that albeit the new judge assignment, it intended to move forward with the case. *See* Docket No. 309. And since then, the Court has worked with the parties to keep this case on track. The

record undoubtedly reflects that it was the Court's intention to try this case in 2024. *See* Docket Nos. 456 and 457. But the earliest date the parties could all agree on was January 21, 2025. So, the Court scheduled the trial accordingly. *See* Docket No. 502.

A total of four judges (including the undersigned) have been assigned to this case. There is no getting around that. But to say that the recusals delayed the proceedings is a blatant misconstruction of the record. Therefore, the Court does not find that, based on the arguments advanced by Mr. Herrera-Velutini, a visiting judge should be appointed to preside over this case.

Lastly, to the extent that this alternative request can be read (as the Government proposes) as a request for the presiding judge to recuse herself, the Court agrees with the Government that Mr. Herrera-Velutini has not articulated a reason as to why she should do so. "Recusals are governed by 28 U.S.C. § 455(a), which provides that a judge 'shall disqualify h[er]self in any proceeding in which h[er] impartiality might reasonably be questioned.'" *United States v. Pulido*, 566 F.3d 52, 62 (1st Cir. 2009) (quoting 28 U.S.C. §

455(a)). During the first status conference that was held by the presiding judge, counsels for Mr. Herrera-Velutini voiced their intention of filing a motion for change of venue and/or recusal. The Court subsequently provided Mr. Herrera-Velutini the opportunity to do so. *See* Docket No. 329. And that is the motion that is currently pending before the Court. However, a close examination of the same confirms that it does not include a request that would fall under § 455(a)'s umbrella and which would therefore warrant the presiding judge's recusal. So even following the Government's proposed reading of Mr. Herrera-Velutini's alternative request, the same falls flat.

### III. CONCLUSION

'"[O]ne cannot block out the sky with one's hand' (no se puede tapar el cielo con la mano)." *See United States v. Moreno Morales*, 815 F.2d 725, 752 (1st. Cir. 1987) (Torruella, J., concurring in part and dissenting in part). The likelihood that media coverage of this case will increase as the trial date nears is high. But, at the end of the day, "[j]urors . . . need not enter the box with empty heads in order to determine the facts impartially." *Skilling*, 561 U.S. at 398. And the "mere exposure

of the potential jury pool to news reports regarding the crime does not, in and of itself, result in an inability to select an impartial jury." *United States v. Pérez-González*, 445 F.3d 39, 46 (1st Cir. 2006).

At bottom, Mr. Herrera-Velutini's submissions and arguments (considering the applicable law) do not show that a change of venue under either Rule 21(a) or Rule 21(b) is warranted. He also fails to show that a visiting judge will avoid delays in this case. Accordingly, the motion at Docket No. 342 is hereby **DENIED.**

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 31st day of May 2024.

S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE