## UNITED STATES DISTRICT COURT
## OF PUERTO RICO
## CASE NO. 22-CR-00342-SCC-HRV

UNITED STATES OF AMERICA,
            Plaintiff,
v.

MARK T. ROSSINI,
            Defendant.
_____/

### MARK ROSSINI'S REPLY TO THE GOVERNMENT'S RESPONSE, AT ECF NO. 725, REGARDING 404(B) EVIDENCE

Mark Rossini ("Mr. Rossini" or "Rossini"), through undersigned counsels, submits this response to the government's reply opposing his Motion in *Limine* to exclude evidence of a separate 2021 bribery scheme (the "2021 Conspiracy"), which allegedly involves only co-defendant Julio Herrera ("Herrera" or "Mr. Herrera"), from the trial concerning the alleged 2020 bribery scheme (the "2020 Conspiracy") in which Mr. Rossini is implicated. [ECF Nos. 725, 655]. The evidence the government seeks to present is irrelevant to Mr. Rossini's case, and, even if marginally relevant to Herrera, poses an undue risk of spillover prejudice that far outweighs any probative value. Accordingly, it must be excluded under Federal Rules of Evidence 401, 402, 403, and 404(b).

### I.    BACKGROUND

On August 30, 2024, the government filed a notice of intent to introduce evidence, under Rule 404(b), regarding the 2021 Conspiracy. [ECF No. 639].

On September 13, 2024, Mr. Rossini opposed this notice, arguing that the proposed evidence was irrelevant to his case and would create substantial spillover prejudice—the very risk the Court sought to avoid by severing the 2021 Conspiracy. [ECF Nos. 655. 427]. On October 17, 2024, the government responded, asserting Herrera's alleged 2021 Conspiracy was "highly probative" of intent and motive for the 2020 Conspiracy, while downplaying the potential for spillover prejudice against Mr. Rossini. [ECF No. 725, p. 1]. The government did not argue that the 2021 Conspiracy was relevant to Mr. Rossini or Governor Vázquez; instead, it minimized the prejudice by suggesting the evidence would only take "90 minutes" to present and could be managed with a simple limiting instruction. [ECF No. 725, pgs. 4, 18, 19]. The government's approach transparently seeks to inject highly prejudicial evidence under a thin veil of relevance, clearly intending for the jury to conflate Herrera's alleged 2021 conduct with Mr. Rossini's 2020 actions. This tactic undermines the fairness of the trial, exploiting prejudicial associations to sway the jury and secure an unjust advantage, all while knowing the lasting impact this evidence will have on the jury's view of the defendants.

## II.    THE GOVERNMENT'S MISUSE OF INAPPLICABLE CASES

The government's reliance on various cases to justify introducing evidence from the 2021 Conspiracy to retroactively suggest intent for the 2020 Conspiracy is misplaced. The cases cited in its response do not support admitting minimally relevant 404(b) evidence when its prejudicial impact

cannot be mitigated by limiting instructions. As explained below, each of these cases is distinguishable and fails to substantiate the government's position. [ECF No. 725, pgs. 19-21].

In *United States v. Dworken*, 855 F.2d 12 (1st Cir. 1988), the DEA targeted Jay Dworken, who was planning a drug smuggling operation, by introducing him to undercover Agent Cunniff. When Dworken's plans stalled, Cunniff proposed a fictitious 20-ton marijuana deal, prompting Dworken to involve co-defendants Steve Rogove and William Gay. *Dworken*, at 14. At trial, the court allowed evidence of Dworken's prior smuggling activities, including his initial stalled operation, to show intent and context for his relationship with Cunniff. *Dworken*, at 26-28. The First Circuit upheld this admission, noting the limiting instructions minimized spillover prejudice against Rogove and Gay. *Dworken*, at 27-28. Notably, the decision primarily reflects deference to the trial court's broad discretion, as the First Circuit observed that less prejudicial means could have shown context and intent but declined to overturn the trial court's judgment. *Dworken*, at 28-29.

The government's reliance on *Dworken* is flawed. First, the "other acts" evidence in *Dworken* was far more relevant than the 2021 Conspiracy evidence the government seeks to introduce here. In *Dworken*, the court upheld evidence of prior drug trafficking because it provided essential context for understanding intent—specifically through recordings where Dworken openly discussed past smuggling, leaving little room for interpretation. *Dworken*, at

4, 27. Here, the 2021 Conspiracy lacks any necessary context for the 2020 Conspiracy and is only marginally relevant. The government plans to introduce this evidence through two cooperating witnesses, Frances Diaz and John Blakeman—its main witnesses for the 2020 Conspiracy—presumably to claim Herrera intended to offer a bribe in 2021. [ECF No. 724, p. 4]. If the government wants to establish Herrera's intent, Diaz and Blakeman could testify directly about his intent in the 2020 Conspiracy without referencing the 2021 Conspiracy. Unlike *Dworken*'s objective, self-incriminating admissions, the government here relies on uncorroborated, subjective testimony about unrelated conduct, which invites undue prejudice and lacks probative value, rendering the 2021 Conspiracy evidence both unnecessary and highly prejudicial.

Second, while prior acts can sometimes clarify intent for future actions, the reverse—using later conduct to infer intent for earlier acts—lacks the same logical foundation. In *Dworken*, the court found it easy for the jury to compartmentalize "other acts" evidence because Rogove and Gay were not involved in Dworken's prior activities, creating no logical bridge for shared intent. *Dworken*, at 29. Here, however, compartmentalizing later conduct is more problematic. The government will attempt to frame the 2021 Conspiracy as an extension of the 2020 Conspiracy, arguing that if Herrera intended to commit bribery in 2021, he must have had the same intent in 2020. This reasoning is flawed, as it assumes a continuity of intent that cannot be reliably

applied retroactively. It is far more logical to infer that someone with criminal intent today may act similarly in the future, but not necessarily that today's intent existed in the past. By presenting minimal evidence of the 2021 Conspiracy, the government seeks to suggest that a crime in 2021 implies a similar crime in 2020—an inference that bypasses the need for direct, contemporaneous evidence of intent for the 2020 Conspiracy. This approach risks prejudicial spillover, impairing the jury's ability to independently assess the charges related to each conspiracy.

Third, unlike in *Dworken*, the 2021 Conspiracy evidence is so disproportionate to the 2020 Conspiracy that it would prevent the jury from easily distinguishing between charges and defendants. In *Dworken*, the court upheld the admission of prior drug smuggling evidence because the evidence against each defendant—Dworken, Rogove, and Gay—was similar in both strength and nature, allowing the jury to distinguish roles without undue prejudice. *Dworken*, at 29. The evidence against Dworken included detailed testimony, recordings of his discussions with undercover agents, and statements showing his role in the smuggling operation. *Dworken*, at 14-15, 23. Likewise, Rogove and Gay were each implicated through similarly compelling evidence, including video recordings of Gay negotiating marijuana deals and Rogove's phone calls setting purchase terms. *Dworken*, at 17-18.

In contrast, the 2021 Conspiracy evidence here is vastly different in both volume and nature. While the 2020 Conspiracy relies on text messages and

circumstantial interpretations of intent, the 2021 Conspiracy includes informants, surreptitious recordings, and witnesses unrelated to the 2020 Conspiracy. This imbalance would likely overwhelm the jury, skewing their perception of the defendants and inviting prejudicial spillover that *Dworken* carefully avoided.

The government relies on *United States v. Brennan*, 994 F.2d 918 (1st Cir. 1993), to argue that jury instructions can cure spillover prejudice. [ECF No. 725, p. 19]. But *Brennan* has no bearing here. That case involved bank fraud charges against James Brennan and J. Edward McHugh, where, on appeal, McHugh challenged the admission of certain promissory notes that formed the basis of counts against Brennan alone. *Brennan*, at 920, 925 n.18. McHugh claimed that the admission of these notes without limiting instructions was "highly prejudicial" to him. The First Circuit dismissed McHugh's challenge, pointing out that he "neither identifies a specific instance where he was denied a limiting instruction nor attempts to explain why the admission of this evidence was highly prejudicial." *Id*. at 925 n.17.

In *United States v. Aguilar-Aranceta*, 58 F.3d 796 (1st Cir. 1995), the First Circuit addressed the careful balancing test required under Rule 403. In that case, the government sought to introduce a prior drug possession conviction to demonstrate the defendant's knowledge of cocaine in packages she was currently accused of possessing. *Aguilar-Aranceta*, at 798. Although the prior act bore many similarities to the charged conduct, the First Circuit

found that it carried a substantial risk of unfair prejudice. In *Aguilar-Aranceta*, both cases involved packages containing cocaine shipped to Aguilar-Aranceta's post office box in Old San Juan. Each package was addressed to her with a return address from Medellín, Colombia, and in both instances, she had not yet opened the packages at the time of her arrest. *Aguilar-Aranceta*, at 799-800. The First Circuit ultimately reversed the conviction, finding that the prior conviction's prejudicial impact significantly outweighed its probative value. The court noted that it could not avoid the conclusion that the most powerful inference the jury would likely draw from the prior conviction was also the impermissible one: that because Aguilar-Aranceta was previously convicted under nearly identical circumstances, she must be guilty in the present case. The specter of impermissible character evidence likely overshadowed any legitimate probative value, as Rule 403 requires a "significant tipping of the scales" in favor of probative worth to justify admission. *Aguilar-Aranceta*, at 800-801.

Here, allowing evidence of the 2021 Conspiracy in a trial focused on the 2020 Conspiracy invites a similarly prejudicial chain of inferences. If the jury hears about Herrera's alleged 2021 bribery scheme, it will likely draw the impermissible conclusion that because Herrera allegedly attempted to bribe an official in 2021, he—and by association, Rossini—must have acted with the same corrupt intent in the 2020 Conspiracy. This creates a serious risk that the jury will infer a continuous pattern of misconduct, believing that Mr.

Rossini's involvement with Herrera in the earlier alleged conspiracy reflects an overall criminal disposition. As in *Aguilar-Aranceta*, the prejudicial effect of this evidence significantly outweighs any probative value, as it would overshadow the specific facts of the 2020 Conspiracy and unfairly taint Rossini by association.

In *United States v. Ofray-Campos*, the First Circuit upheld the admission of evidence that one defendant, López-Soto, had murdered a rival drug gang leader as part of a broader narcotics conspiracy. Notably, the Indictment specifically charged that the defendants engaged in violence to further the conspiracy's objectives. *Ofray-Campos*, at 35. As such, López-Soto's murder of a rival gang leader was not treated as a separate "other act" under Rule 404(b) but as direct proof of the violent means used to advance the drug organization's goals. *Id*. Although potentially prejudicial, this evidence was deemed highly probative of López-Soto's role as an "enforcer" for the gang, Las Avispas, and demonstrated the group's reliance on violence to secure its interests. *Id*. The court concluded that the district court's limiting instruction successfully mitigated any risk of spillover prejudice against his co-defendants. *Id*.

Here, by contrast, the government seeks to introduce the separate and subsequent 2021 Conspiracy, to suggest Herrera's intent in the alleged 2020 conspiracy. *Ofray-Campos* focused on a single violent act directly tied to advancing the conspiracy's goals, which is far easier for a jury to

compartmentalize without inferring broader criminal propensity about the co-defendants. In our case, by contrast, the government's attempt to introduce a separate conspiracy inherently risks impermissible inferences of shared intent and knowledge among the defendants. Conspiracies, by nature, center on mental states—intent, knowledge, agreement—and thus are far more likely to lead a jury to draw improper associations between Herrera's alleged later actions and Rossini's intentions in the earlier conspiracy. This type of prejudicial inference is precisely what Rule 404(b) seeks to prevent, and no limiting instruction could adequately safeguard against it in this case.

In *United States v. Mubayyid*, 658 F.3d 35 (1st Cir. 2011), the First Circuit reviewed the admission of evidence regarding the defendants' support for mujahideen and violent jihad in a conspiracy to defraud the IRS. Mubayyid and Muntasser, leaders of the charitable organization "Care," allegedly concealed its non-charitable activities to maintain a tax-exempt status. The government's central theory was that Muntasser had established Care specifically to fraudulently obtain a tax exemption, allowing contributions used to support mujahideen overseas to qualify as charitable tax deductions. *Mubayyid*, at 40. The First Circuit found this "terrorism" evidence relevant, as it clarified the defendants' motivations and intentions behind misleading the IRS about activities inconsistent with a charitable purpose. *Id.*, at 56.

To address potential prejudice, the district court gave detailed limiting instructions directing the jury to consider the "terrorism" evidence solely for

the IRS fraud charges, which the First Circuit held sufficiently mitigated any risk of unfair influence. *Id.*, at 73. The court emphasized that Mubayyid and Muntasser's convictions were based on IRS-related charges, distinct from those linked to the "terrorism" evidence, thereby reducing the potential for spillover prejudice. *Id.* The overwhelming evidence on the IRS charges further lessened the risk of undue influence from the inflammatory nature of the "terrorism" evidence. *Id.*, at 74.

Here, unlike in *Mubayyid*, the government's proposed evidence regarding Herrera's 2021 conspiracy is unrelated to Mr. Rossini's conduct or intent in the 2020 conspiracy and is, at best, marginally relevant to Herrera. The government's attempt to introduce an unrelated conspiracy fails to provide any meaningful probative value. Additionally, unlike in *Mubayyid*, Mr. Rossini's charges closely mirror those alleged in the 2021 scheme, significantly heightening the risk of improper spillover. Presenting evidence of the 2021 conspiracy would encourage the jury to infer a continuous pattern of criminal conduct, unfairly prejudicing Rossini in a way that limiting instructions cannot effectively address.

Finally, the government's reliance on *United States v. Weadick*, 15 F.4th 1 (1st Cir. 2021), is misplaced. In *Weadick*, Francis Salemme and Paul Weadick were tried and convicted for murdering Steven DiSarro in 1993 to prevent him from cooperating with federal agents. *Weadick*, at 7. Relevant here, on appeal, Weadick challenged the admission of two pieces of evidence: (1) Salemme's

admission in a 1999 proffer that he lied about a third party's involvement in DiSarro's murder, and (2) testimony that Weadick and Frank Jr. conspired to rob drug dealers. The court found Salemme's admission did not prejudice Weadick because it was introduced solely to show Salemme's consciousness of guilt, was carefully limited to Salemme alone, and did not implicate Weadick in DiSarro's murder. Moreover, given the nature of the evidence, the court found that Salemme's lie would have made no difference to the jury, given the much more severe evidence of other actions by the defendants, such as the testimony from Weadick's girlfriend, Flemmi, and DeLuca. The court reasoned that, considering someone clearly killed and buried DiSarro, Salemme's admission was at most a "mixed bag" for Weadick, unlikely to sway the jury's view in any significant way. *Weadick*, at 16.

As for the drug-con evidence, the First Circuit found it relevant to show mutual trust between Weadick and Frank Jr., crucial for the government's case that Weadick would assist in DiSarro's murder. The evidence demonstrated that their relationship involved criminal activities, strengthening the inference of loyalty. The risk of prejudice was minimal, as the drug-con scheme was far less serious and dissimilar to murder, and already admissible evidence had established Weadick's connection to the Salemme family, reducing any prejudicial impact.

In contrast, the government claims it is introducing evidence of Herrera's involvement in the 2021 Conspiracy solely to show Herrera's intent,

yet it is fully aware that this evidence will also cast doubt on Rossini's alleged intent in the 2020 Conspiracy—a welcomed effect for the government. Unlike in *Weadick*, where the objected-to evidence clarified a relationship of mutual trust relevant to the charged conduct, the 2021 Conspiracy offers no insight into the 2020 Conspiracy or the relationships between the defendants. Instead, introducing evidence of a separate, subsequent conspiracy risks conflating Herrera's unrelated conduct with the charged acts, inviting improper inferences about shared criminal intent. Furthermore, unlike *Weadick*, the government's limited evidence of intent for the 2020 Conspiracy heightens the risk of prejudicial spillover, as there is no comparable foundation in this case to counteract the impact. As a result, no limiting instruction would adequately protect Mr. Rossini's right to a fair trial.

## III.   CONCLUSION

The government's proposed introduction of Herrera's alleged 2021 bribery scheme under Rule 404(b) is both legally unfounded and prejudicially flawed. The cases cited by the government do not support the introduction of minimally relevant evidence with a high risk of spillover prejudice, particularly where the probative value is marginal at best. Allowing the jury to hear about a separate, subsequent conspiracy would inevitably invite impermissible character inferences against Mr. Rossini, undercutting his right to a fair trial. Given the distinct nature, participants, and objectives of the two alleged conspiracies, any probative value in showing intent or motive is

overwhelmingly outweighed by the prejudice that would arise from the jury's improper association of the two schemes.

**WHEREFORE**, Mr. Rossini requests that Your Honor exclude evidence of the 2021 bribery scheme to prevent undue prejudice and ensure that Mr. Rossini receives a fair trial based solely on the evidence related to the 2020 conspiracy.

Respectfully submitted,

*/s/ Lydia Lizarribar Masini*
**LIZARRIBAR MASINI LAW OFFICE**
G-14 O'Neill Street, Suite A
San Juan, PR 00918
(787) 250-7505
lizarribarlaw@gmail.com

**STUMPHAUZER KOLAYA NADLER & SLOMAN, PLLC**
Two South Biscayne Boulevard, Suite 1600
One Biscayne Tower
Miami, FL 33131
Telephone: (305) 614-1400

/s/ *Michael B. Nadler*
Michael B. Nadler
Fla. Bar No. 51264
mnadler@sknlaw.com
*Admitted pro hac vice*

/s/ *Juan J. Michelen*
Juan J. Michelen
Fla. Bar No. 92901
jmichelen@sknlaw.com
*Admitted pro hac vice*

*Attorneys for Mark T. Rossini*

## CERTIFICATE OF SERVICE

I certify that on November 20, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, causing a copy to be served on counsel of record.

/s/ *Juan J. Michelen*
Juan J. Michelen