THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>[1] WANDA VÁZQUEZ GARCED,<br>[2] JULIO M. HERRERA VELUTINI,<br>[3] MARK T. ROSSINI,<br>Defendants. | CRIMINAL NO. 22-342 (SCC) |

**THE UNITED STATES' RESPONSE TO DEFENDANT ROSSINI'S MOTION TO COMPEL THE GOVERNMENT TO IDENTIFY**
***BRADY, JENCKS, and GIGLIO* MATERIAL**

## I.     INTRODUCTION

The United States meets its *Brady* obligations when it provides any exculpatory or impeachment material within its possession to a defendant. Virtually every Circuit to address the question of whether the Government must identify *Brady* material within produced discovery has found that the law imposes no such requirement. In this case, the United States has not only produced discovery required by the Federal Rules of Criminal Procedure, but it also produced the investigate files from two adjacent investigations. Any evidence favorable to the defendants in the prosecution team's possession is in the defendants' possession.[1]

Mr. Rossini seeks to require the United States to identify "all *Brady, Jencks,* and *Giglio* material within the vast discovery already produced." Rossini Mot., ECF No. 755, p. 1. In support of his request, Rossini cites to several cases, none of which support this request, and has accused

---

[1] The Government's Filter Team has also made productions of potentially protected material to identified privilege holders.

the government of providing only a mass of disorganized material to the defense. The United States respectfully requests that the Court deny his request.[2]

## II.  BACKGROUND

A.  **The United States' Discovery Productions**

The United States has previously described the history of the discovery productions in this case when responding to Defendant Julio Herrera's similar motion to compel the identification of *Brady* material. *See* ECF No. 687. For brevity's sake, it will not repeat that history here. The United States will, however, provide the Court further information and background on its discovery productions and discovery practice in general, which has gone above and beyond that in most federal criminal cases in this District and elsewhere.

The United States' productions of electronic evidence from searched electronic accounts and phones have been consistent with the standard practice of the legal industry in general and the Department of Justice in particular. All of the productions have been prepared by Automated Litigation Support ("ALS"), the section that supports all of the Department of Justice Criminal Division's litigating sections. All of the discovery produced in this case has been produced in load-ready files capable of importation to searchable electronic databases. The production in this case allows for keyword search reviews, relevancy "tagging" by the defense teams, filtering by date, file type, and source, and de-deduplication. For example, when loaded on to Relativity, a search platform commonly used by prosecutors and defense attorneys alike, users can see, among other things, the discovery production number, the evidence's source, and the Bates number:

---

[2] To the extent practicable, the United States would also request that for purposes of a ruling on Mr. Rossini's Motion, it be consolidated with Mr. Herrera's Motion that was similar in nature, and the United States Response. *See* ECF Nos. 662 & 687.



The format further allows the user to see the document type, its file path, the name of the document, and the account holder, with search and filter capacity for each individual category:



The documents can be searched collectively or within collections for search terms, as the search for the word "OCIF" in text conversation between Herrera and Frances Diaz demonstrates:



The United States has further facilitated the defendants' discovery review and preparation for trial in a number of other ways, including:

- Providing a detailed discovery log, which is now 45 pages long and specifically itemizes hundreds of items and their exact Bates number. This discovery log far exceeds what is standard practice in this district and nation-wide. The Government has previously filed a copy of the log into the record so the Court can see for itself. (*See* Discovery Log at ECF No. 727-1.);

- Providing "hot documents" (called "Timeline Exhibits" in the discovery production) in December of 2023, nearly 20 months ahead of trial;

- Providing transcripts of its witnesses' grand jury testimony on September 7, 2022, nearly three years before trial;

- Providing a 36-page Designation of Evidence, 31 pages of which list specific items of evidence, and provide descriptions, dates, and exact Bates numbers;

- Providing discovery in multiple formats. For example, in January, Rossini's counsel requested search warrant returns utilizing the UFED Reader software platform, because it would "make the discovery infinitely more searchable." *See* ECF. No. 476, p. 23 (Transcript of January 16, 2024 status conference). The United States thereafter produced 11 search warrant returns, which have also been produced in a load-ready format, with the UFED Reader and Axiom or software platform, which allow the reviewer to review the evidence in a format that more closely approximates how the data would have been used by the owner from whom the evidence was seized;

- Offering to provide the defendants technical assistance with the discovery review. For example, at the request of one defense attorney, in May 2024, the United States emailed six different user manuals for using the Relativity software, as well as links to tutorial videos. This offer remains open to all defendants;

- Providing detailed responses to defendant's discovery requests; and

- In the case of Rossini, in particular, providing detailed responses to his counsel's questions related to the discovery, the evidence, and pertinent legal issues.

Defendant and his co-defendant's motions have demonstrated that they have had no difficulty finding what he characterizes as *Brady* material. *See, e.g.*, Herrera's Motion to Dismiss,

ECF No. 262, p. 11 (stating that the exculpatory and impeachment material found in discovery entitled him to dismissal and attaching 21 documents produced in discovery in support; motion denied at ECF No. 506); Herrerra's Motion to Continue Trial, ECF. No. 592 (arguing that "[t]he overwhelming majority of this discovery is new and contains quintessential Brady and Giglio material"; motion denied at ECF No. 593); Rossini's Motion to Dismiss, ECF No. 676, p. 2 (arguing "the government's own evidence and timeline undermine their claim of a corrupt scheme between Rossini, Herrera, and Vázquez"). Defendants Herrera and Rossini also were able to complete the reviews of the discovery for attorney-client privileged materials and have provided the United States with detailed privilege logs. Rossini, for example, completed his filter review in a timely manner and produced a standard privilege log, listing the bates numbers of the documents, the document's name or email subject line, and the parties to the email. Herrera has also completed multiple privilege reviews and provided the same information.

And while the United States cannot know the defendants' trial strategy and theories, it has discussed the case with counsel for each defendant over its now 27-month course. The United States will remain sensitive to any evidence or information that may come into its possession that would appear to serve an anticipated defense and will produce it to all three defendants.

### III.  DISCUSSION

**A.  Rossini offers no new legal authority supporting his argument that prosecutors must identify *Brady* or *Giglio* material within previously disclosed discovery**

As the United States previously explained in its response to Herrera's motion to compel the identification of *Brady* material within previously disclosed evidence, every circuit court to consider similar arguments has objected to it. In support of his argument, Rossini cites only the same *district* court cases that Herrera argued supported his demand. Notably, all of these trial level decisions are from outside the First Circuit, because these are the only decisions to ever rule

that Government must identify *Brady* material in discovery already disclosed. Even those, however, are mischaracterized in Rossini's arguments as imposing some heightened standard of identification of *Brady* material under the law.

Every circuit court, including the First Circuit, that has addressed the argument that the United States must specifically identify all exculpatory information within its discovery productions has flatly rejected it. *See United States v. Morales-Rodriguez*, 467 F.3d 1, 14-15 (1st Cir. 2006); *United States v. Kirk Tang Yuk*, 885 F.3d 57, 86 (2d Cir. 2018); *United States v. Pelullo*, 399 F.3d 197, 212 (3d Cir. 2005); *United States v. Yi*, 791 F. App'x 437, 438-39 (4th Cir. 2020), *cert. denied*, 140 S. Ct. 2542 (2020) (unpublished); *United States v. Skilling*, 554 F.3d 529, 576 (5th Cir. 2009), aff'd in part and vacated in part on other grounds, 561 U.S. 358 (2010); *United States v. Warshak*, 631 F.3d 266, 297-98 (6th Cir. 2010); *United States v. Gray*, 648 F.3d 562, 567 (7th Cir. 2011); cf. *United States v. Velasco*, No. 98-50525, 2000 U.S. App. LEXIS 440, at *10-11 (9th Cir. Jan. 7, 2000) (unpublished).[3]

Rossini attempts to distinguish each case by either incorrectly asserting that the United States' production here is inconsistent with best discovery practices, or pointing to differences in the size of the production here compared to the cited cases. But the cases all fully support the principle that the United States is not required to specifically identify *Brady* material. Moreover, the cases cited by the United States in response to Herrera's motion are just the tip of the iceberg for those refuting his arguments and Rossini's. To the extent Rossini attempts to minimize or explain away all the case law disfavorable to his position, he has much more work to do. *See, e.g. Rhoades v. Henry*, 638 F.3d 1027, 1039 (9th Cir. 2011) ("Rhoades points to no authority requiring

---

[3] The United States does not re-state here its full explanation of the case law on this issue, which it previously provided in its response to Mr. Herrera's Motion to Compel the Identification of *Brady* Material. *See* U.S. Response, ECF No. 687, pp. 5-15. The United States respectfully requests to incorporate by reference its previous discussion of the case law in response to Herrera's motion.

the prosecution to single out a particular segment of a videotape [produced in discovery], and we decline to impose one."); *United States v. Mulderig*, 120 F.3d 534, 541 (5th Cir. 1997) ("[T]here is no authority for the proposition that the government's *Brady* obligations require it to point the defense to specific documents with[in] a larger mass of material that it has already turned over")), *cert. denied*, 565 U.S. 946; *United States v. White*, 970 F.2d 328, 337 (7th Cir. 1992) ("[e]vidence cannot be regarded as 'suppressed' by the government when the defendant has access to the evidence before trial[.]"); *United States v. Parks*, No. 18-CR-0251, 2019 WL 4979838, at *3 (N.D. Okla. Oct. 8, 2019) (denying motion to compel government to "identify potentially exculpatory evidence that is included in the discovery materials" because, "defendants have not shown that *Brady* or *Giglio* requires more than the production of potentially exculpatory evidence."); *United States v. AU Optronics Corp.*, 09-cr-0110, 2011 WL 6778520 at *2 (N.D. Cal. 2011) (denying motion to compel government to identify Brady material within 37 million pages of documents produced in discovery); *United States v. Rubin/Chambers*, 825 F. Supp. 2d 451, 454 (S.D.N.Y. 2011) ("[T]he Court finds that *Brady* and its progeny impose no obligation on the Government to organize for Defendants in the format they design material already provided to them.").

Aside from the handful of out-of-circuit district court decisions relied on by Rossini and Herrera, the case law uniformly rejects that argument the United States must identify *Brady* material within evidence already produced in discovery. This is because the touchstone of *Brady* is disclosure or non-disclosure. *United States v. Josleyn*, 206 F.3d 144 (1st Cir. 2000) (noting a *Brady* violation requires willful or inadvertent suppression of evidence). What Rossini attempts is no less than a re-defining of the *Brady* rule itself. If this Court holds that *Brady* requires the further identification of evidence already disclosed to the defendants, that means that a *Brady* violation can occur even if the favorable evidence is in the defendant's possession.

The United States is not aware of a single federal case that has ever found a *Brady* violation where the exculpatory evidence had been produced to the defendants. And the few cases upon which Herrera and Rossini rely provide no explanation or guidance for how a court would evaluate an alleged *Brady* violation based on evidence produced and in the possession of a defendant. They provide no guidance for how a court must evaluate whether a defendant should have found the evidence himself before trial. They provide no guidance for how a court would even discern whether a defendant had, in fact, found the document, but held it back to later alleged a *Brady* violation. And they certainly provide no guidance for how to evaluate prejudice to a defendant who had the supposedly exculpatory evidence <u>in his possession</u>. Courts have not provided answers to these questions because they have not contemplated such a drastic expansion of *Brady*.

Rossini argues that *Brady* requires "active disclosure," which he equates to going beyond "mere production" and specific identification, Rossini's Motion, p. 5. But he offers no actual support for this position other than his own interpretation of Black's Law Dictionary and the same district court cases cited by Herrera. No Circuit court cases require identification of *Brady*, as sought by Rossini.

Rossini also argues that "[c]ourts have consistently held that the government cannot simply 'dump' vast quantities of discovery on defense'" and recycles two cases cited by Herrera in support. *See* Rossini's Motion, p. 6 (citing *United States v. Saffarinia*, 424 F. Supp. 3d 46 (D.D.C. 2020) and *United States v. Hsia*, 24 F. Supp. 2d 14 (D.D.C. 1998)). As described in the government's response to Herrera's arguments, neither of these cases found a violation of *Brady*, and both are distinguishable on their facts from the situation here. *See* ECF 687, pp. 9–13. Further, a "data dump" implies that the Government has produced extraneous evidence to bury the defendants in evidence. The vast majority of the evidence in this case came from the email

9

accounts and phones belonging to the defendants and witnesses in this case, not some unrelated source. In any case where the United States seizes email accounts, electronic devices, cloud-based back-ups, or servers, a vast majority of the data seized does not relate to the charged misconduct. Rossini's attempt to distinguish this case from others – suggesting that in cases such as *Skilling* and *Warshak*, the tens of millions of pages of corporate documents seized and produced all related to the charged frauds – is baldly specious. It is not "padding" the defendants with "superfluous information" when the Government produces evidence seized in searches of accounts and phones belonging to the defendants and the witnesses. If the United States had pared down the evidence that it produced from that seized, the defendants would instead argue that they're entitled to all of the evidence so that they can search for exculpatory evidence themselves. This is, in fact, exactly what they've done.

To the extent that Rossini is alleging that the United States is intentionally burying exculpatory information, this is baseless. As detailed above, the United States has gone to great lengths to ensure the defendants are well-situated to mount full trial defenses. The undersigned have met with defense counsel, provided detailed discovery responses, and even provided pertinent legal authority on nuanced matters of federal bribery law. And in the case of the productions of the search warrant evidence, the Prosecution Team received non-potentially privileged evidence from the Filter Team and then immediately processed it for release to the defendants without performing its own review. When Rossini requested a full forensic copy of Mr. Blakeman's phone, the Government provided it.

Rossini, like Herrera, also misconstrues the Justice Manual.[4] The Court can see for itself that the provisions of the Manual cited require disclosure, not identification. It specifically states,

---

[4] The United States has previously noted that the Justice Manual does not create any rights for the defendant. *See* ECF No. 687, p. 11. In its opening section it explicitly states "[i]t is not intended to, does not, and may

10

"[a]s discussed more fully below in Step 2, in cases involving a large volume of potentially discoverable information, prosecutors may discharge their disclosure obligations by choosing to make the voluminous information available to the defense." *Id*., 9-5.002(B)(3). It further advises that "[i]n cases involving voluminous evidence obtained from third parties, prosecutors should consider providing defense access to the voluminous documents to avoid the possibility that a well-intentioned review process nonetheless fails to identify material discoverable evidence." *Id.*, 9-5.002. Given that this provision encourages prosecutors to provide broad access of discovery specifically to avoid discovery violations where they fail to identify discoverable evidence, no objective reading of it could construe a requirement to identify evidence already produced. Indeed, in an overwhelming number of cases in every jurisdiction, Justice Department attorneys have disputed the same arguments made by defendants like Rossini (and prevailed). *See* United States Response, ECF No. 687, p. 6.

Simply stated, defendants are attempting to construct a lose-lose situation for the United States, where they demand full productions of the evidence in the Government's possession and then accuse the United States of a "data dump." At best, Rossini's motion relies on dicta from cases rejecting his argument and applies it to a false premise that the United States' productions are a "data dump" by virtue of their size alone. What the Government has done here is what the courts endorse: broad treatment of its discovery productions to put the defendants on the same footing as the Government. Indeed, the format provided to the defense is the same format possessed by the United States. In instances where evidence produced is non-searchable for defendants, it is also not searchable for the United States. Defendants are receiving the evidence as the United States possesses it.

---

not be relied upon to create any rights, substantive or procedural, enforceable at law by any part in any matter, civil or criminal." U.S. Dept. Justice, Justice Manual, 1-1.200.

11

Finally, Rossini contends that the United States "flagrantly defies this Court's explicit directive" when it asserts it will conduct a "*Giglio* check" closer to trial. Rossini's Motion, p. 24. To be sure, the defendants have been provided with any impeachment material in the possession of the prosecution team. By a "*Giglio* check," the United States means that it will request agency reviews of the personnel files of any federal agents it may call as witnesses for potential impeachment material. The reason the United States waits to do this until closer to trial is because if the requests are made too far in advance, it will have to repeat the request to capture any new adverse personnel material as trial nears. This is standard practice in federal prosecutions, and even if it were not, the United States has not made any final decisions on which federal agents it may call. Nevertheless, so that this issue does not result in unnecessary and redundant litigation, the undersigned will request a *Giglio* review for the case agents and will provide any results to Mr. Rossini by January 23, 2025.

As for *Giglio* of other Government witnesses, the cooperation agreements and proffer letters for all government witnesses were provided months (if not years) ago and the government has included that information in its Discovery Logs.[5] It is clear that these productions included the disclosure of agreements of government witnesses and Rossini's demand that the Government identify them as such is absurd. *Giglio* information that is often disclosed only when a trial is imminent has been available to Rossini for years.

---

[5] By way of example, proffer letters for five government witnesses, an Immunity letter for another, and the plea agreement for an additional witness was provided on September 7, 2022; a plea and cooperation agreement for a government witnesses was provided on March 7, 2023; and the plea and cooperation agreements for two cooperating witnesses as well as other Delta file material, were provided on May 29, 2023. All of this material is explicitly identified in the Discovery Log provided to all defendants.

**B.      Rossini's Argument about the Justice Manual is Misleading**

Rossini, like Herrera, cites to the Justice Manual to assert that the Government "has effectively buried crucial *Brady* material within an unmanageable data dump." Rossini Mot., p. 18.  In accusing the Government of conflating Justice Manual principles, Rossini demonstrates a misunderstanding, of the Government's obligations pursuant to the Justice Manual. Critical to the Court's analysis is § 9-5.002's explicit instructions to prosecutors regarding information derived from third parties – which would naturally include the content of all search warrants and grand jury subpoena returns provided in this case:

> **Step 2: Conducting the Review**
>
> Having gathered the information described above, prosecutors must ensure that the material is reviewed to identify discoverable information. It would be preferable if prosecutors could review the information themselves in every case, but <u>such review is not always feasible or necessary</u>. The prosecutor is ultimately responsible for compliance with discovery obligations. Accordingly, the prosecutor should develop a process for review of pertinent information to ensure that discoverable information is identified. Because the responsibility for compliance with discovery obligations rests with the prosecutor, the prosecutor's decision about how to conduct this review is controlling. This process may involve agents, paralegals, agency counsel, and computerized searches. Although prosecutors may delegate the process and set forth criteria for identifying potentially discoverable information, prosecutors should not delegate the disclosure determination itself. <u>In cases involving voluminous evidence obtained from third parties, prosecutors should consider providing defense access to the voluminous documents to avoid the possibility that a well-intentioned review process nonetheless fails to identify material discoverable evidence.</u> Such broad disclosure may not be feasible in national security cases involving classified."  *Id.*, 9-5.002 (Step 2) (emphasis added).

In other words, where review of all material is not practical or possible, prosecutors are encouraged to make everything in their possession available within the confines of the law. The Prosecution Team has made disclosures of search warrant material contemporaneous with its own receipt of the data from the Filter Team. These broad disclosures were an attempt to put the defense on equal footing with the Government with regards to access to information received from third parties. This approach is encouraged by the Justice Manual.

13

C.      *Jencks* **Production**

The government has previously provided witnesses statements, including grand jury transcripts and exhibits, FBI-302s and 1023s, and in-scope search warrant material/hot docs from witnesses' devices, far in advance of the Court's designated early *Jencks'* production. Despite this, Rossini complains that the *Jencks* production of emails of potential FBI witnesses is "a disorganized, chaotic mass that is practically unusable in its current form." Rossini Mot., p. 21. This characterization is easily refuted.

Again, the *Jencks* production at issue contains load-ready files capable of importation to searchable electronic databases. When properly imported, the importation includes, among other information, the filepath, filename, and email to/from email from information (where appropriate). The filepath information includes the identity of the witness corresponding to that material. For example, DOJ-000842292 includes the following information: "/../2400014917_FBI Jencks Material_2024.07.12/SWB **Jencks_L.Colon**/2022_378/05.02.22-09.29.22/Fwd_ NEW ARREST _Wanda Vazquez Garced_.msg/Fwd: NEW ARREST "Wanda Vazquez Garced." (emphasis added). This filepath clearly indicates that it is being identified by the United States as *Jencks* material for Special Agent Colon. A screen shot from a portion of the uploaded production is below:



Each of the columns above can be filtered to exclude/include only information that Rossini would like to review. In a matter of seconds, a user can isolate all material labeled as Special Agent Colon's *Jencks*.[6] The lengthy attachments to agent emails – which Rossini also complains about – were provided to the defense so that they can make sense of what the emails are discussing. These documents contain drafts of search warrants and other material that were already produced, and immediately follow the produced email. For instance, in its *Jencks* production, DOJ-0008430360 is an email from Special Agent Colon to Special Agent Andrew Waltz with an affidavit in support of a search warrant.

---

[6] The government stands ready to provide whatever assistance necessary to facilitate ease of use with Relativity and has, in the past, done so with counsel for other defendants.

> **affidavit**
>
> From: "Colon, Lauren (SJ) (FBI)" <lcolon2@fbi.gov>
> To: "Waltz, Andrew E. (SJ) (FBI)" <aewaltz@fbi.gov>
> Date: Fri, 19 Mar 2021 20:08:33 +0000
> Attachments: jsblakeman@yahoo_03.19.21.docx (94.89 kB)
>
> <<...>>
>
> Lauren Colón
> Special Agent
> FBI – San Juan Field Office
> Public Corruption 1 Squad
> O: (787) 987-6284
> C: (787) 249-9768

DOJ-0008430360

DOJ-00084330361 through DOJ-0008430412 which immediately follows the email sequentially in the production, is the 52-page affidavit that is attached to the email. Page 1 of this affidavit is below:

> UNITED STATES DISTRICT COURT
> FOR THE DISTRICT OF PUERTO RICO
>
> IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH ONE ACCOUNT(S) STORED AT PREMISES CONTROLLED BY OATH HOLDINGS, INC FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. 666
>
> SC No. _____
>
> Filed Under Seal
>
> **AFFIDAVIT IN SUPPORT OF
> AN APPLICATION FOR A SEARCH WARRANT**
>
> I, Andrew Waltz, being first duly sworn, hereby depose and state as follows:
>
> **INTRODUCTION AND AGENT BACKGROUND**
>
> 1. I make this affidavit in support of an application for a search warrant for information which is associated with one account – that is, jsblakeman@yahoo.com – which is stored at premises controlled by Oath Holdings, Inc. (for Yahoo) ("PROVIDER"), an electronic communications services provider and/or remote computing services provider which is headquartered at / which accepts service at 701 First Avenue, Sunnyvale, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require PROVIDER to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B, using the procedures described in Section III of Attachment B.
>
> 2. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since July 12, 2015. I have received basic law enforcement training at the FBI Academy in
>
> DOJ-0008430361

The United States has provided a sequential production of emails of Special Agents followed by any relevant attachments referred to in the emails. Thus, the materials have been organized in a straightforward matter. Rossini's complaints regarding Jencks production are unsupported and should be rejected by the Court.

## IV. CONCLUSION

For the reasons above and the reasons cited in the Government's Response to Herrera's similar motion for the identification of *Brady* material, the United States respectfully requests that Mr. Rossini's motion be denied.

**Certificate of Service**

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will notify all counsel of record.

**RESPECTFULLY SUBMITTED**, this 5th day of December, 2024.

| | |
|---|---|
| COREY R. AMUNDSON<br>Chief, Public Integrity Section | W. STEPHEN MULDROW<br>United States Attorney |
| | |
| */s/ Nicholas W. Cannon*<br>Nicholas W. Cannon (G01814)<br>Ryan R. Crosswell (G03502)<br>Trial Attorneys<br>Department of Justice<br>Public Integrity Section<br>1301 New York Ave., NW - 10th Floor<br>Washington, D.C. 20530<br>(202) 514-8187<br>Nicholas.Cannon2@usdoj.gov | *s/ Myriam Y. Fernandez-Gonzalez*<br>Myriam Y. Fernandez-Gonzalez - 218011<br>Assistant U.S. Attorney<br>Torre Chardón, Suite 1201,<br>350 Carlos Chardón Street<br>San Juan, Puerto Rico 00918<br>Office: 787-766-5656<br>myriam.y.fernandez@usdoj.gov |