**UNITED STATES DISTRICT COURT
OF PUERTO RICO
CASE NO. 22-CR-00342-SCC-HRV**

UNITED STATES OF AMERICA,
　　　　Plaintiff,
v.

MARK T. ROSSINI,
　　　　Defendant.
_____/

**REPLY TO THE UNITED STATE'S RESPONSE TO MR. ROSSINI'S MOTION TO COMPEL THE IDENTIFICATION OF *BRADY*, *JENCKS*, AND *GIGLIO* MATERIALS IN DISCOVERY**

　　Mark Rossini ("Mr. Rossini" or "Rossini"), through undersigned counsels, submits this Reply to the United States' Response to his Motion to Compel Identification of *Brady*, *Jencks*, and *Giglio* Materials. [ECF No. 767]. This Reply addresses key misrepresentations in the government's response, particularly concerning the organization and usability of the discovery provided, as well as the government's mischaracterization of the relevant case law. [ECF No. 755].

**I. THE GOVERNMENT'S RESPONSE MISREPRESENTS THE NATURE OF ITS DISCOVERY PRODUCTION.**

　　The government asserts that the discovery was produced in an organized and searchable format, enabling the defense to conduct a meaningful review. However, this claim is inconsistent with the actual production provided. Far from being "organized," the production lacks the most basic elements of usability, as follows:

1. **MISSING METADATA AND ORGANIZATION.**

The government alleges that the discovery includes "load-ready files capable of importation to searchable electronic databases." [ECF No. 767, p. 2]. However, this assertion fails to acknowledge the critical deficiencies in the metadata accompanying these files. While the Russo Affidavit specifically addresses these deficiencies in Discovery Production 11, the same issues persist across the nearly 30 productions the government has provided thus far. As noted in the Russo Affidavit, the absence of essential metadata fields—such as "Date/Time Created," "Custodian," and "Communication Type"—renders the productions unsearchable and effectively useless for filtering or sorting purposes. [ECF No. 453, Exhibit B, Russo Affidavit, pp. 4-5]. Without this information, even advanced e-discovery platforms like Relativity cannot effectively organize or process the files, leaving the defense to manually sift through vast amounts of unstructured data.

Moreover, metadata is crucial for authenticating and contextualizing evidence. For example, without fields such as "Participants" in group chats or "File Size," the defense cannot verify the chain of custody or confirm the authenticity of key communications. [ECF No. 453, Exhibit B, Russo Affidavit, p. 5]. This failure to provide necessary metadata not only deviates from best practices but also undermines the defense's ability to analyze the evidence efficiently. It is akin to handing the defense a jumbled box of puzzle pieces, where critical identifying marks—such as edge pieces or corner pieces—are

missing, making it nearly impossible to assemble the picture needed to question a witness effectively.

Crucially, this lack of metadata and search functionality also impairs the defense's ability to conduct effective cross-examinations, a right that lies at the heart of the *Jencks* Act. As the Supreme Court emphasized in *United States v. Clancy,* 365 U.S. 312 (1961), withholding or obscuring key information prevents the defense from adequately impeaching witnesses and challenging the government's evidence. For instance, without metadata indicating who participated in a group chat or when a specific message was sent, the defense is left guessing about critical contextual details that could disprove a witness's account or reveal inconsistencies. Without searchable metadata, the defense cannot identify or contextualize critical materials to confront witnesses effectively, further undermining the fairness of the proceedings.

The production also includes numerous files that are unsearchable PDFs lacking OCR (Optical Character Recognition) processing, as detailed in prior filings. [ECF No. 561, p. 3]. The Russo Affidavit confirms that these deficiencies force the defense to manually process and index the data, a time-consuming and unnecessary burden. [ECF No. 453, Exhibit B, Russo Affidavit, p. 6]. Such issues directly contradict the government's claim that the production is "organized."

## 2. MISLEADING PRESENTATION OF SEARCH FUNCTIONALITY.

The government's assertion that the production allows for "keyword search reviews, relevancy 'tagging' by the defense teams, filtering by date, file type, and source, and de-deduplication" is both inaccurate and misleading. [ECF No. 767, p. 2]. These functionalities depend on the availability of complete and accurate metadata, which the production lacks. For example, the absence of a "Date Sent" field prevents the defense from organizing communications chronologically, a basic function necessary for understanding the timeline of events. [ECF No. 453, Exhibit B, Russo Affidavit, p. 4].

Additionally, the government's screenshots of the Relativity platform create a false impression of usability, as the defense was not provided access to this platform or its functionalities. [ECF No. 767, pp. 3-4]. The production, delivered in its current state, requires the defense to build its own database, a process requiring significant resources and technical expertise. This added burden is exacerbated by the government's failure to provide critical metadata and properly formatted load files, rendering the purported search functionality ineffective. [ECF No. 453, Exhibit B, Russo Affidavit, p. 7].

## 3. CONSISTENT IGNORING OF DEFENSE'S CONCERNS.

The defense has repeatedly highlighted these deficiencies in prior motions, emphasizing the disorganized nature of the government's productions and the absence of critical metadata. [ECF No. 561, pp. 5-7; ECF No. 453, p. 3]. Despite these concerns, the government has failed to address these issues,

continuing to assert that its production complies with discovery obligations. This pattern of ignoring the defense's objections demonstrates a disregard for the practical realities of reviewing millions of pages of disorganized documents.

### 4. INADEQUATE DISCOVERY LOG.

The government claims it provided a "detailed discovery log" to aid the defense in reviewing the voluminous production. [ECF No. 767, p. 5]. This claim is preposterous. The government's 44-page log, which purports to describe over 10 million pages of materials[1], fails to reasonably or fairly summarize the discovery contents in any meaningful way. The log consists primarily of barebones descriptions such as "Grand Jury Subpoena Return: Apple" or "Surveillance," without elaboration on the nature of the documents or their relevance to the case.

Instead of aiding the defense, the government's discovery log exacerbates confusion. The entries are vague and lack context, such as "Grand Jury Subpoena Return: AT&T - Rossini, Waters, Herrera," which spans hundreds of pages without explaining the contents. Some entries encompass staggering amounts of material. For instance, "Search Warrant Return: Phone – Vazquez-Garced" spans at least 345,087 pages, while the sole entry for Discovery Production 18, titled "Oficina del Comisionado de Instituciones

---

[1] As repeatedly highlighted throughout this case, the true volume of discovery is closer to 60 million pages, far exceeding the already staggering figures cited here.

Financieras (OCIF) Production to Federal Bureau of Investigation (FBI)," purports to describe nearly 400,000 pages. These broad, nonspecific descriptions fail to summarize the data or indicate its relevance, forcing the defense to navigate an unmanageable volume of material without guidance. Far from alleviating the burden of this disorganized production, the log renders it even more difficult to locate crucial documents.

Moreover, the log contains no indexing, cross-referencing, or metadata-driven categorization that could assist in locating critical materials. For example, metadata fields such as date, file type, and custodians are absent from the log, despite their importance for sorting and searching the data. These metadata deficiencies cripple the usability of the productions, and the government's discovery log does nothing to address these fundamental issues.

The inadequacy of the log is emblematic of the government's broader failure to fulfill its discovery obligations. Courts have long recognized that the government cannot satisfy its discovery responsibilities merely by making massive data dumps or providing meaningless logs. The defense has repeatedly raised concerns about these issues, yet the government continues to provide incomplete and unusable materials while touting a deficient log as a remedy. [ECF No. 561; ECF No. 453].

The Court should reject the government's assertion that its log constitutes a meaningful effort to comply with discovery obligations. The log,

as it stands, is virtually useless in assisting the defense to identify relevant materials amidst an overwhelming volume of data.

### 5. INADEQUATE DESIGNATION OF EVIDENCE

The government claims its 36-page Designation of Evidence, listing items with Bates numbers, descriptions, and dates, provides sufficient notice to the defense. [ECF No. 767, p. 5]. This claim is unfounded. The designation is excessively broad, often listing entire datasets like "All content" from devices or accounts without identifying which specific materials the government intends to use at trial. Such vague and sweeping entries force the defense to wade through millions of pages of irrelevant material, rendering the designation virtually useless. [ECF No. 453, pp. 5-7].

Even where the government provides descriptions, they lack meaningful detail. For instance, labels like "Emails from [account]" or "Banking records of [individual/entity]" offer no context or explanation of relevance. These deficiencies violate the purpose of Rule 12(b)(4)(B), which is to give the defense notice of evidence so it can prepare pretrial motions effectively. *United States v. Vilar*, 530 F. Supp. 2d 616, 640 (S.D.N.Y. 2008).

The government's approach undermines fairness by forcing the defense to guess which evidence will be presented at trial, risking trial by ambush. The Court should compel the government to amend its designation to include precise descriptions, clear Bates ranges, and relevance explanations to allow for meaningful defense preparation.

## II. THE GOVERNMENT MISREPRESENTS CASE LAW AND MISSES CRITICAL DISTINCTIONS

The government asserts that Mr. Rossini provided "no new legal authority" to support his request for the identification of *Brady* materials within the vast discovery production. [ECF No. 767, p. 6]. This claim is both incorrect and irrelevant. The defense has already cited numerous cases, including most of the same ones referenced by the government, to demonstrate that courts consistently require meaningful disclosure when faced with massive, disorganized productions. The government's attempt to rely on these cases while mischaracterizing their holdings is disingenuous.

For instance, the government cites *United States v. Skilling*, 554 F.3d 529 (5th Cir. 2009), to argue that it has no obligation to identify *Brady* materials. [ECF No. 767, p. 6]. However, *Skilling* explicitly emphasized that the government provided a fully searchable and indexed database to the defense, warning that "padded" productions containing irrelevant material could violate *Brady*. Here, the government has acknowledged that its production includes vast amounts of irrelevant content and lacks the indices and metadata that made the production in *Skilling* navigable. [ECF No. 476, p. 35].

Similarly, the government misinterprets *United States v. Yi*, 791 F. App'x 437 (4th Cir. 2020), as supporting its position. [ECF No. 767, p. 6]. In *Yi*, the court rejected a *Brady* claim because the defendant failed to point to any specific evidence withheld or suppressed. Unlike *Yi*, Mr. Rossini has

consistently detailed the overwhelming size and disorganization of the government's production as the obstacle preventing meaningful access to *Brady* material. The cases cited by the government consistently reject the idea that overwhelming the defense with unmanageable volumes of discovery satisfies *Brady* obligations.

The government also dismisses the defense's reliance on the unprecedented size of its production, stating that differences in production size are irrelevant. [ECF No. 767, p. 7]. This argument is absurd. The size of the production is the most critical distinction, as the sheer volume of 60 million pages renders traditional *Brady* disclosure practices wholly inadequate. As the Supreme Court has repeatedly emphasized, *Brady* requires not only that the government disclose favorable evidence but also that it take affirmative steps to learn of such evidence held by others acting on its behalf, including law enforcement. See *Kyles v. Whitley*, 514 U.S. 419, 437 (1995) ("The individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case."); *Strickler v. Greene*, 527 U.S. 263, 281 (1999). This duty applies regardless of whether the evidence is explicitly requested by the defense. See *United States v. Agurs*, 427 U.S. 97, 107 (1976). It also encompasses impeachment evidence as well as exculpatory evidence. *See United States v. Bagley*, 473 U.S. 667, 676 (1985).

The government's failure to provide any meaningful identification of *Brady* materials within this immense production violates these principles.

Indeed, if the government had truly fulfilled its duty to "learn" and "disclose" as required under *Brady*, it should be a straightforward matter for the prosecution to answer the one critical question Mr. Rossini has urged the Court to ask:

> *"Have you found any Brady material within your production?"*

The government's ability—or inability—to answer this question directly will illuminate whether Mr. Rossini's concerns about the disorganized and unmanageable nature of their production are valid.

Courts have repeatedly recognized that larger productions impose heightened obligations on the government to assist the defense in locating exculpatory evidence. See *United States v. Saffarinia*, 424 F. Supp. 3d 46, 91-92 (D.D.C. 2020) (requiring the government to identify *Brady* material within a production of 3.5 million pages); *United States v. Hsia*, 24 F. Supp. 2d 14, 29 (D.D.C. 1998) (requiring identification of *Brady* material in a production of 600,000 documents).

The defense cannot engage in an endless back-and-forth over these issues. The government has repeatedly misrepresented the holdings of the cases it cites, attempting to conflate compliance with smaller, well-organized productions with the disorganized data dump presented here. The Court should review these cases independently and recognize that the government's discovery practices in this case fail to meet constitutional standards.

## III. THE GOVERNMENT'S EXAMPLE ILLUSTRATES THE CHAOS OF ITS OWN *JENCKS* PRODUCTION.

The government asserts that its *Jencks* production is "organized" and references a specific document, DOJ-000842292, as an example of its usability. [ECF No. 767, p. 14]. The government claims this document is part of its *Jencks* production for Special Agent L. Colon, suggesting that the file path naming structure and metadata make the production navigable and sufficient. However, this assertion is demonstrably false, as revealed by the government's own discovery log.

According to the log, the Bates range for the *Jencks* production related to FBI witness materials spans DOJ-0008430255 to DOJ-0008440558 and DOJ-0008440559 to DOJ-0008440616. The document the government highlights, DOJ-000842292, is not within this range and is thus not part of the designated *Jencks* material. This discrepancy exposes the inaccuracies in the government's representations and underscores the chaotic and disorganized nature of its production.

| 22ND PRODUCTION (2024.08.29 All Defendants) | | |
|---|---|---|
| FBI Jencks Material | DOJ-0008430255 | DOJ-0008440558 |
| SUPPLEMENTAL 22ND PRODUCTION (2024.08.30 All Defendants) | | |
| FBI Jencks Material | DOJ-0008440559 | DOJ-0008440616 |

Rather than supporting the government's claim of organization, this misrepresentation raises an even more troubling issue: the government is now apparently labeling documents as "*Jencks* material" that it had not previously identified as such. The referenced document, DOJ-000842292, falls outside the designated Bates range for *Jencks* production as detailed in the government's

own discovery log. If this document is truly part of the *Jencks* production, then the government has failed to disclose the full scope of its *Jencks* material to the defense. This omission not only exacerbates the disorganization of the production but also undermines the defense's ability to prepare effectively, as we cannot discern what materials the government intends to classify as *Jencks*. Such a shifting and inconsistent approach to discovery imposes an unfair and insurmountable burden on the defense, compounding the chaos of an already unmanageable production.

## IV. CONCLUSION

The government's disorganized, inconsistent, and misrepresented discovery production has created an insurmountable burden on the defense, obstructing Mr. Rossini's ability to prepare for trial. The inaccuracies in the government's representations—exemplified by its failure to properly categorize *Jencks* material—further underscore the chaotic nature of its production. This lack of clarity not only frustrates the defense's ability to identify critical evidence but also undermines the fairness and integrity of the proceedings.

**WHEREFORE**, Mr. Rossini respectfully requests that this Court enforce its orders and compel the government to specifically identify all *Brady*, *Jencks*, and *Giglio* materials within its production, ensuring compliance with constitutional obligations and safeguarding Mr. Rossini's right to a fair trial.

Respectfully submitted,

*/s/ Lydia Lizarribar Masini*
**LIZARRIBAR MASINI LAW OFFICE**
G-14 O'Neill Street, Suite A
San Juan, PR 00918
Telephone: (787) 250-7505
lizarribarlaw@gmail.com

**STUMPHAUZER KOLAYA NADLER & SLOMAN, PLLC**
Two South Biscayne Boulevard,
Suite 1600, Miami, FL 33131
Telephone: (305) 614-1400

/s/ *Michael B. Nadler*
Michael B. Nadler
Fla. Bar No. 51264
mnadler@sknlaw.com

/s/ *Juan J. Michelen*
Juan J. Michelen
Fla. Bar No. 92901
jmichelen@sknlaw.com
*Admitted pro hac vice*

*Attorneys for Mark T. Rossini*

## CERTIFICATE OF SERVICE

I certify that on December 20, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, causing a copy to be served on counsel of record.

/s/ *Juan J. Michelen*
Juan J. Michelen